OPINION
{¶ 1} Appellant, Christopher R. Curd, appeals from a judgment of the Lake County Court of Common Pleas, sentencing him to ten years imprisonment for his conviction on one count of rape, a felony in the first degree, in violation of R.C. 2907.02(A)(2). For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 2} The charges in this case arise from an offense that occurred at a party on the night of August 16, 2002, and the early morning hours of August 17, 2002. Appellant was eighteen at that time. The record included the hearing transcript, presentence report (which included the official police version of the offense), and psychological report. It reveals the following facts.
 {¶ 3} Appellant and the victim, a fifteen-year-old girl, met each other for the first time on August 16, 2002, at a party on South St. Clair Street in Painesville, Ohio. The party continued into the morning hours of August 17, 2002. The party was thrown by individuals in their twenties and thirties who supplied alcohol to the underage partygoers. The victim attended the party with her younger brother (the "brother"), who was approximately fourteen years old at the time. The victim admitted voluntarily drinking rum, root beer schnapps, and beer. Appellant had consumed about six to eight beers and six to eight shots of liquor, and he was smoking marijuana.
 {¶ 4} At the party, appellant got into a fist fight with a friend of the victim, J.U., and had dirty clothes and a smear of blood on his neck as a result. After this, according to the testimony of K.W., a friend of appellant, the victim was "hugging" and "staying around" appellant. The victim, however, stated that she had been trying to stay away from appellant because he had gotten into a fight with J.U.
 {¶ 5} The party continued, and someone yelled that the police had arrived. The victim decided to go into the back yard to hide in a shed. The victim remembered appellant slamming her against a parked van near the shed and then falling to the ground. Then she only remembered pain and discomfort in her vagina and then being at Rainbow Babies and Children's Hospital, to which she was admitted on August 18, 2002, after being transferred from Lake East Hospital. The victim denied consenting to sexual relations.
 {¶ 6} Statements from appellant and witnesses reveal how the offense occurred and what ensued afterwards. Appellant provided his version of events to the police. In doing so, he confessed to numerous incriminating facts, summarized as follows.
 {¶ 7} According to the official police version of the offense, appellant knew that the victim was intoxicated, as he stated that the victim was a "stupid drunk." Appellant claimed that she consented to sexual intercourse. Appellant also claimed that the victim followed him around the party, and they walked back toward the darkened part of the driveway. He stated she unbuckled his pants and started to give him oral sex. Then he stated he unbuckled her pants, and she took her pants off. He pulled her to the ground, they had intercourse for about fifteen minutes, and then he started to fondle her vagina. He said that he was very aroused and took his left hand and placed it inside her vagina. Appellant stated that he was able to put his whole hand inside of her up to his fist, and then he began moving his hand around.
 {¶ 8} Appellant admitted the victim said that it hurt and told him to stop. Despite this, appellant stated that he continued. After the victim told him a second time to stop because it hurt so much, appellant took his hand out and began to have sexual intercourse with the victim again. Appellant reported that the victim then passed out. However, by appellant's own admission, he continued to have sexual intercourse with her for about fifteen minutes even after she passed out. Appellant could not ejaculate, pulled his pants up, and advised the victim not to move or say anything. He admitted that he left the victim in the yard bleeding.
 {¶ 9} In addition to the preceding version, appellant later gave a statement which conflicted to several previously related details of the offense. He now told the police that he unbuckled his pants, she unbuckled hers, and then she gave him oral sex. He also told the police several times that he now did not believe that he had sexual intercourse with her at all until after he placed his entire fist in her. Then he said that he started fondling her vagina and was able to slide his whole hand inside her and did that for about five minutes. The victim told him to stop, and he stopped but then began to have sexual intercourse with her. Appellant's statements in both instances constitute a confession to rape, as charged.
 {¶ 10} The subsequent investigation revealed a two-foot by six-foot area of blood-soaked grass where the offense took place. Personal items, believed to belong to the victim, were scattered. After the offense, appellant came into the house with his hands and pants covered with blood. Appellant said that there was a girl outside who was easy and anyone could have her. Appellant then lifted up his left hand, and his hand was covered with blood up to his wrist.
 {¶ 11} The brother went outside and saw the girl was his sister and stated "that kid raped my sister." The victim was laying in the yard near a van, naked from the waist down, and bleeding from the pelvic area. Her shirt was pulled up around her neck, and her pants were off and tangled around the ankle of her right leg. K.K., a female who attended the party, and her boyfriend, J.H., reported that the victim was unconscious. The brother became enraged, went inside the house, punched appellant, and then struck him in the head with a barbell he found in the house.[1]
 {¶ 12} Meanwhile, K.K. ran into the house, returned with some clothing, and dressed the victim. K.K. and J.H., with the help of the brother, took the victim to her home in Mentor, Ohio.
 {¶ 13} The victim's mother, with the help of the brother, took her to the same ER that appellant had visited. The victim was examined by a physician, and a rape kit was completed. During the examination, the victim would occasionally regain consciousness and state, "[s]top, you're hurting me, I don't even know you." The victim had scrapes and bruises on her forearms and the insides of both thighs, was bleeding from lacerations to her uterine wall, and it appeared as though her nose may have been broken. The fifteen-year-old victim's blood alcohol content was reported at 0.370, more than three times the level that the state of Ohio recognizes as an adult being intoxicated. Importantly, this blood alcohol level was tested at about 2:30 a.m., well after the offense, as appellant arrived at the emergency room at about 1:10 a.m.
 {¶ 14} Officer Simmons was dispatched again to the same ER, at 2:13 a.m., for a report that a fifteen-year-old female had been raped while at a party on St. Clair Street. At the ER, Officer Simmons met with the victim's mother and brother. The brother explained how he had hit the appellant over the head with a barbell, and Officer Simmons then had reason to believe the suspect was appellant, the individual who he had met earlier in the ER.
 {¶ 15} After speaking with the victim's mother and brother at Lake East Hospital, the police returned to the site of the party for an investigation. Appellant was there, provided his statement, and was arrested. The police did not test appellant's blood alcohol content.[2]
 {¶ 16} On Sunday, August 18, 2002, the victim was transported from Lake East Hospital to Rainbow Babies and Children's Hospital in Cleveland, Ohio. She underwent surgery to repair the lacerations to her uterine wall and injuries to her cervix and vagina.
 {¶ 17} While she was at Rainbow Babies Hospital, the victim was able to give a statement, although she was hazy about what had happened. She reported that she had been drinking rum, root beer schnapps, and beer. The police had approached the party, and she went outside to hide in a shed in the yard. The shed was adjacent to a van, and she reported that appellant pushed her against the side of the van and then onto the ground. She remembered telling him to stop and that he was hurting her, but she stated he would not stop. She does not remember anything after that and denied having consensual sex.
 {¶ 18} On Monday, August 29, 2002, a complaint was filed by the Painesville Police Department, alleging that appellant committed rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2), and sexual battery, a felony of the fourth degree, in violation of R.C. 2907.03(A).
 {¶ 19} That same day, appellant was arraigned on these charges. Appellant pleaded not guilty to both charges.[3] Bond was set at $50,000, with the condition that he have no contact with the victim or her family. Bond was later modified to $50,000 or ten percent cash, with the condition remaining. Appellant posted bond in the amount of $5,000.
 {¶ 20} By way of information, on October 23, 2002, appellant was charged with one count of rape in violation of R.C. 2907.02(A)(2). On November 18, 2002, appellant waived prosecution by indictment, consented to prosecution by way of information, and entered a written plea of guilty to the charge of rape, with a stated sentence range from three to ten years.[4] The trial court accepted appellant's guilty plea. That same day, the trial court issued a judgment entry, re-setting appellant's bond at $50,000, again with the condition that he have no contact with the victim or her family.
 {¶ 21} The matter was referred to the Adult Probation Department of the Lake County Court of Common Pleas for a presentence interview and report, victim impact statements, drug and alcohol evaluation, and further psychiatric evaluation for purposes of sexual predator classification under R.C. 2950.09.
 {¶ 22} The presentence report, dated December 5, 2002, reveals the following pertinent facts. Appellant's written version of the offense, according to his presentence questionnaire, stated "I was at a party drinking became [sic] heavily intoxicated and this is the outcome." According to the presentence report, appellant "thinks the whole thing has been blown out of proportion."
 {¶ 23} Appellant reported that his father previously drank daily to the point of intoxication but was currently sober. When appellant's parents' divorce was finalized about June 2002, appellant moved in with his father and drank every day to the point of intoxication. Appellant admitted to drinking and smoking marijuana on the night in question. Since the offense, however, appellant claims that he moved back with his mother in an attempt to remedy his substance abuse problem. Although appellant stated that he stopped drinking since the offense, he also admitted he began to drink alcohol again. He reported that he smokes about an eighth of an ounce marijuana a week, has never been treated for substance abuse, and does not believe marijuana is harmful to his health. A urine sample, taken on November 14, 2002, tested positive for marijuana; however, a sample taken at the time of the presentence interview tested negative for all drugs.
 {¶ 24} The presentence report also revealed appellant's criminal history. Appellant was sentenced to probation by the Lake County Juvenile Court in 1997 for habitual truancy and was also sentenced to detention for a domestic violence incident in 1997.[5] As an adult, other than the instant offense, appellant has one drug abuse charge, for possession of marijuana, in July of 2002. Appellant was driving without a valid license in 2000, and his right to apply for a license was denied. Once he was able to obtain a license, appellant was cited for failing to stop for an accident on August 1, 2002; appellant was fined and sentenced to six months probation and either five days in jail or forty hours of community service. At the time of the presentence interview, appellant's license was suspended.
 {¶ 25} Appellant completed the ninth grade and dropped out of high school in the tenth grade; he does not have his General Equivalency Diploma ("GED").
 {¶ 26} John Fabian ("Fabian"), licensed clinical psychologist, examined appellant on December 16, 2002, and he provided a report, dated December 19, 2002. Fabian indicated "[d]uring the evaluation, [appellant] was somewhat cavalier with an attitude about prison. * * * He does not understand the gravity of the situation and said, `All I care about is getting a free education.'"
 {¶ 27} Fabian noted no signs of mental illness, depression, or suicidal or homicidal tendencies in appellant. Fabian did note that appellant reported some antisocial personality features, but he scored more similarly to individuals who are immature rather than those who are markedly antisocial. Appellant also evidenced "histrionic personality features as he is likely to be seductive, dramatic, wanting to be the center of attention, and is theatrical in nature." Further, Fabian note that appellant had "significant substance abuse related legal issues."
 {¶ 28} No victim impact statements were received by the trial court.
 {¶ 29} On January 2, 2003, the matter came before the trial court for a sexual predator hearing and a sentencing hearing. Before the trial court heard arguments on behalf of the parties, the trial court noted that appellant had indicated to his attorney that he was considering requesting the court to withdraw his guilty plea.[6] The court asked appellant to explain why he might wish to withdraw his plea. Appellant stated, "I don't feel that I've been represented adequately in this case and there's [sic] too many holes in the story and I'd like to hire a real attorney." Appellant explained further, "I have a lot of my friends that were at the party, there's too many things [sic] missing in the story, there was evidence that was not collected." Appellant stated that he had enough money to hire another attorney.
 {¶ 30} First, the trial court inquired of appellant as to specific evidence that was not collected. Appellant responded that "there was a pair of pants at the — left that were thrown away when the house was remodeled. * * * [They were] the victim's. They should have been collected as evidence and they weren't." When questioned as to what the pants would prove, appellant contended that this would show that there was not a good investigation of the crime.
 {¶ 31} Appellant's counsel then advised the court about the pants. She stated, "[r]ight after the incident happened I went out to the scene of the crime, I spoke to one of the witnesses who is sitting here in court and I spoke to two other people there and I took statements from them. I found the pants * * *. I couldn't collect those pants because it's evidence in a crime. I took a photograph of them. I did let the Prosecutor know that they were out there. I didn't think ethically I could collect those pants since they were part of a criminal investigation. But I did take a picture of them and I did speak with the detective who investigated the case and called him on the carpet for not collecting them. So I just want the record to be clear that I did investigate the case. * * * I don't know one way or another what would transpire from the pants."
 {¶ 32} At that point, the prosecutor added, "* * * she would have been charged with tampering with a crime scene. She was not permitted to collect evidence at the crime scene. * * * It's my understanding from the facts of this case, the clothing of this victim was removed prior to this criminal act. There would not be any evidentiary value to this clothing. They had to * * * collect someone else's clothing to put on this girl at the time they took her to the hospital. Any evidence of this crime would be in that clothing, not the clothing at the scene."
 {¶ 33} Appellant's counsel also noted that she did inform appellant that his blood alcohol content was never tested.
 {¶ 34} After hearing appellant's concern regarding the pants, the trial court further inquired of appellant as to what his attorney had not done. Appellant then stated, "[I asked] for copies of papers that I never got. I tried to get — contact her last Friday, left messages for her, she didn't return my call." The trial court asked for concrete examples. Appellant responded with no examples, repeating, "I don't feel I've been represented adequately by her and I would like to hire my own attorney."
 {¶ 35} The court told appellant that he had not provided a substantial reason to withdraw his plea and then questioned appellant as to why he pleaded guilty on November 14, 2002. In response, appellant stated, "[w]ell, I'll just stick — stay with my plea."
 {¶ 36} The trial court then told appellant that it wanted "to give [him] an adequate hearing on this" and that he was looking for a "legitimate basis" for appellant to withdraw his plea. Appellant told the court, "I guess I don't have one." Appellant added that he had claimed innocence and has done so all along, including when he entered his plea. He indicated that a guilty plea was "just the easiest route compared to what [he] was looking at."[7]
 {¶ 37} The court further noted that, without the plea bargain, appellant would likely be indicted on multiple offenses, including rape with a maximum sentence of ten years of imprisonment, felonious assault which carries an additional eight years of imprisonment, kidnapping which carries an additional ten years of imprisonment, and child endangerment which carries an additional eight years of imprisonment. The record is unclear as to how the court knew that appellant would likely be indicted on these charges if appellant were to withdraw his plea. At the hearing, the trial court indicated it learned this information "based on the reports" it had seen.
 {¶ 38} The court stated, "it's my understanding * * * that your attorney thought it best to limit me to the maximum of ten years in prison. Because if you are indicted on all those other * * * charges, that allows me, if I can think of an appropriate reason, to make them all consecutive." Maximum and consecutive sentences could run a total of thirty-six years. Appellant still maintained his desire to withdraw his plea.
 {¶ 39} The trial court then indicated that it wanted to make sure appellant understood the impact of withdrawing his plea. The court stated that if appellant withdrew his plea, he could face many more years in prison than he would with his plea. The trial judge stated, "[i]f I were to sentence you under a circumstance where * * * you're found guilty of multiple offenses and I send you to prison for more than ten years, even I can't let you out. If I send you to prison for ten years, even if I give you the maximum on this, I could still let you out. However, if I give you more than ten years, even I can't let you out. No one can let you out. The Parole Board doesn't have the authority to let you out, I'm the only one that can.[8] But if I give you more than ten years, even I can't let you out; do you understand that?" Appellant stated that he understood.
 {¶ 40} The trial court then inquired as to the specifics of why appellant believed his counsel was ineffective, telling appellant that the court needed specific examples. Appellant's only response was "I don't feel I've been represented adequately by her and I would like to hire my own attorney." The court further pressed appellant to provide specific examples of ineffective assistance. This time, appellant told the court that he requested that his attorney get his medical records, which would indicate his blood alcohol content on the night in question, but she did not do so. At this time, the prosecutor stated, "I subpoenaed that information. They did not take a blood alcohol test from [appellant]. He refused treatment, he was released [from Lake East Hospital]."[9]
Appellant's counsel added that she informed appellant that his blood alcohol content was not tested. When asked by the judge whether his blood alcohol content would prove that he was innocent of the crime, appellant stated, "[i]t wouldn't. I'd just like to know what it was."
 {¶ 41} The court continued to inform appellant that it was looking for a "factual, reasonable, and legitimate basis for [appellant] to withdrawal of the plea." Appellant's response was, "I don't have one then." The court then asked another time, "[w]hat else did you tell your attorney that you wanted done or investigated that she didn't do?" Appellant's response was, "I'm just not happy." (Emphasis added.)
 {¶ 42} The court noted that unhappiness was too vague of a reason and gave appellant another opportunity to articulate a reasonable and legitimate basis to withdraw his plea. Appellant did not have anything to add. He stated, "* * * I gave you all the reasons I can to withdraw my plea that I have." The trial court then afforded appellant's family the opportunity to speak on the matter. Appellant's father stepped forward, stating that appellant's attorney did everything she could. Appellant's mother declined comment.
 {¶ 43} The trial court finally concluded, affirmatively, "I have not heard a reasonable or legitimate basis to allow you to withdraw your plea. I'm denying the * * * motion." The trial court then proceeded to the sentencing phase of the hearing.
 {¶ 44} On appellant's behalf, the trial court heard testimony from a twenty-one-year-old friend of appellant, K.W., who was at the party; another man whose relationship to appellant was not evidenced from the record; and appellant's mother. The victim did not wish not to be present at the hearing. An advocate for the victim was present but did not speak.
 {¶ 45} The trial court issued a judgment entry dated January 13, 2003. The trial court stated that it did not find, by clear and convincing evidence, that appellant was a sexual predator. Instead, the court found appellant to be a sexually oriented offender and subject to registration verification requirements for a period of ten years, as set forth by R.C. 2950.04 through R.C. 2950.06.
 {¶ 46} With regard to the sentencing part of the hearing, the trial court stated on the record at the sentencing hearing that it had "* * * considered the record, the oral statements made, the victim impact statement through the girlfriend, the presentence report, the drug and alcohol and psychological evaluation, the letters in support, the statement of the Defendant and his counsel * * * [as well as] the principles and purposes of sentencing under R.C. 2929.11. I've balanced the seriousness and recidivism factors under R.C. 2929.12." In doing so, the trial court stated, "I find that prison is consistent with the purposes and principles of sentencing. Prison is mandatory in this case and I find the offender's not amenable to an available Community Control Sanction. The Court also finds that the minimum sentence in this case would demean the seriousness of the offense and would not adequately protect the public from future crime by this Defendant or others. The Court finds that maximum imprisonment is warranted because the offender committed the worst form of the offense and the offender poses the greatest likelihood of committing future crimes."
 {¶ 47} The trial court sentenced appellant to a prison term of ten years at the Lorain Correctional Institution. Appellant was also ordered to pay restitution to the victim. This was memorialized in a January 13, 2003 judgment entry.
 {¶ 48} From that judgment, appellant initially appealed setting forth two assignments of error. The hearing on this matter was scheduled for oral arguments on March 3, 2004. On February 6, 2004, with new counsel, appellant filed a motion for leave to file supplemental assignments of error and a brief in support of an extension of time. This court granted the motion. Thereafter, appellant filed four additional assignments of error.
 {¶ 49} Appellant's assignments of error include the following:
 {¶ 50} "[1.] The trial court erred to the prejudice of the defendant-appellant when it ordered a term of imprisonment by making findings under the applicable sentencing statutes that were not supported by the record.
 {¶ 51} "[2.] The trial court erred by sentencing the defendant-appellant to the maximum term of imprisonment on all charges.
 {¶ 52} "[3.] Defendant was denied due process of law and his right to counsel when the court failed to take any action at defendant's sentencing when defendant stated he was dissatisfied with court-appointed counsel.
 {¶ 53} "[4.] Defendant was denied due process of law when the court did not grant defendant a hearing on his motion to withdraw his plea.
 {¶ 54} "[5.] Defendant was denied a fair tribunal in considering defendant's motion to withdraw his plea.
 {¶ 55} "[6.] Defendant was denied due process of law when the court did not take proper corrective action when defendant wished to withdraw his plea."
 {¶ 56} In appellant's first two assignments of error, appellant alleges the trial court erred when sentencing him. Specifically, he contends that the trial court erred by making findings that were not supported by the record and by sentencing him to the maximum sentence. We disagree.
 {¶ 57} Our review of a felony sentence is de novo. R.C. 2953.08; Statev. Raphael (Mar. 24, 2000), 11th Dist. No. 98-L-262,2000 Ohio App. LEXIS 1200. A court reviewing "a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 10; R.C. 2953.08(G).
 {¶ 58} When sentencing an offender and imposing a sentence, a trial court must follow the mandates of R.C. 2929.12(A), which states:
 {¶ 59} "[In sentencing a felony offender] the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing."
 {¶ 60} According to R.C. 2929.12(B), factors raising the seriousness of the offense include, among others: (1) the physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim; (2) the victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense; (3) the offender's relationship with the victim facilitated the offense; and (4) in committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 {¶ 61} Likewise, factors making the offense less serious according to R.C. 2929.12(C) include, among others: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or property; and (4) substantial grounds exist to mitigate the offender's conduct.
 {¶ 62} Then the trial court must consider factors indicating whether the offender is likely to commit future crimes. R.C. 2929.12(D) through2929.12(E). As outlined in R.C. 2929.12(D), factors indicating that an offender is likely to commit future crimes include, among others: (1) the offender previously was adjudicated a delinquent child or has a history of criminal convictions; (2) the offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child, or the offender has not responded favorably to sanctions previously imposed for criminal convictions; (3) the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse; and (4) the offender shows no genuine remorse for the offense.
 {¶ 63} Likewise, factors outlined in R.C. 2929.12(E), indicating the offender is not likely to commit future crimes, include: (1) prior to committing the offense, the offender had not been adjudicated a delinquent child; (2) prior to committing the offense, the offender had not been convicted or pleaded guilty to a criminal offense; (3) prior to committing the offense, the offender had led a law-abiding life for a significant number of years; (4) the offense was committed under circumstances not likely to recur; and (5) the offender shows genuine remorse for the offense.
 {¶ 64} After reviewing these factors, a trial court must make specific findings on the record at the sentencing hearing before imposing an offender to the maximum sentence. R.C. 2929.14(C); Comer at fn. 2. To impose the maximum sentence, a trial court must find on the record that the offender committed the worst form of the offense and that the offender poses the greatest likelihood of committing future crimes. R.C. 2929.14(C); State v. Edmonson, 86 Ohio St.3d 324, 325, 1999-Ohio-110;Comer at fn. 2.
 {¶ 65} A trial court cannot satisfy the requirements of R.C. 2929.14
by merely asserting it has reviewed the record. Blanket assertions of that kind are not sufficient to justify a trial court's reasoning for imposing a given sentence, and the "findings mandated by R.C. 2929.14
must appear in the judgment entry or the transcript of the sentencing hearing." State v. Earle, 11th Dist. No. 2001-L-159, 2002-Ohio-4510, at ¶ 7.
 {¶ 66} We will now address the merits of appellant's first two assignments of error. Under appellant's first assignment of error, he argues that the trial court's findings under R.C. 2929.12 were not supported by the record. We disagree.
 {¶ 67} Appellant argues that the trial court's finding, pursuant to R.C. 2929.12(B), that his action was based upon the gender of the victim, was not supported by the record. The trial court specifically found on the record at the sentencing hearing, "* * * that the offense was motivated by prejudice based upon gender. This was a — a rape case where Defendant exercised his power over a — another individual based upon her — her gender." Appellant bragged about his actions to others at the party and referred to the victim as an "easy girl." When there is a rape of a member of the opposite sex, it is perhaps axiomatic to observe that the gender of the victim is a motivating factor. There was nothing to indicate that appellant was homosexual or bisexual, hence the rape was gender specific. Regardless, that was a fairly minor consideration when one considers the mind-boggling brutality of the offense.
 {¶ 68} Appellant also argues that the record did not support the trial court's findings under R.C. 2929.12(C). First, appellant contends that the "victim facilitated or induced the offense" and that this makes the offense less serious pursuant to R.C. 2929.12(C)(1). Appellant points to the testimony of K.W., who was present at the party. K.W. testified that the victim was "hugging" and "staying around" appellant on the night in question. This witness also stated she saw the victim go behind the driveway with appellant, where the alleged rape occurred. As a result, appellant argues the victim initiated the sexual contact between the two and that this lessens the seriousness of his offense.
 {¶ 69} Appellant's argument is baseless and absurd. The fifteen-year-old victim had a blood alcohol content of 0.370, rendering her, as the trial court aptly noted, "practically comatose when [appellant] went to work on her." Even if the victim had initiated a
flirtation, it is unreasonable to believe this lessens the severity of the crime or that the victim would "[consent] to being fisted and causing that type of laceration and just sitting still for it," as the trial judge noted. Any initiation is irrelevant to the instant offense and injuries the victim suffered.
 {¶ 70} Appellant also argues that, under R.C. 2929.12(C)(2), his offense is less serious because he was intoxicated and that he acted under strong provocation. While the evidence demonstrates appellant had been drinking on the night in question, appellant's alleged intoxication is not supported by the record. Officer Simmons, who spoke with appellant on the evening of the incident, noted that appellant smelled of a light odor of alcohol. However, Officer Simmons's observation was that appellant was not intoxicated. Further, appellant's intoxication is not a mitigating factor and is, actually, an aggravating factor because appellant was eighteen years old and had no legal right to consume alcohol under Ohio law.
 {¶ 71} Within appellant's first assignment of error, appellant next argues that the record did not support the trial court's findings under R.C. 2929.12(D). Specifically, appellant contends that the trial court's finding that he denied having a drug or alcohol problem and refused treatment for it was not supported by the record. According to appellant, he acknowledged his problem and took measures to correct it, and he argues this makes his offense less serious. Appellant had been living with his father, whose lifestyle included drinking and partying. After the incident, appellant went to live with his mother, allegedly to remedy his substance abuse problem.
 {¶ 72} Appellant's contention is meritless and is contradicted by the evidence. Appellant indicated in his presentence interview that he quit drinking after the offense, but then started drinking again. Further, on the day of the sentencing hearing, appellant tested positive for marijuana. Certainly, the fact that appellant would run afoul of the law while awaiting sentencing on the serious charge of rape demonstrates that he has a problem for which he refused treatment. Accordingly, the trial court's finding, on the record at the sentencing hearing, that appellant had a substance abuse problem for which he refused treatment was supported by the record.
 {¶ 73} Further, appellant takes issue with the trial court's finding that he has a history of criminal convictions or delinquency adjudications. He contends that his offense is less serious because this instant matter was his first felony conviction and his only other adult
conviction was a misdemeanor drug conviction. According to appellant, in making this finding on the record at the sentencing hearing, the trial court improperly weighed his adult conviction and should not have considered his two juvenile delinquency charges.
 {¶ 74} Again, appellant's contention is baseless. R.C. 2929.12(D)(2) does not limit the trial court's consideration of an offender's criminal record only to adult convictions and felony convictions. In fact, R.C. 2929.12(D)(2) specifically mandates that the trial court consider juvenile charges, as R.C. 2929.12(D)(2) provides that the trial court must consider whether "[t]he offender previously was adjudicated adelinquent child * * * or the offender has a history of criminal convictions." (Emphasis added.) The trial court properly considered appellant's juvenile adjudications and adult misdemeanor conviction in finding that he has a history of criminal convictions or delinquency adjudications.
 {¶ 75} Appellant also argues under this first assignment of error that the trial court erred by not finding any factors, pursuant to R.C. 2929.12(E), that indicate he is not likely to reoffend. First, appellant argues that the circumstances under which this offense occurred are not likely to reoccur, and he is not likely to reoffend. In doing so, appellant points to his alleged intoxication and that he was living in a bad environment with his father. He alleges these circumstances are not likely to reoccur.
 {¶ 76} Appellant's argument is baseless. Even if appellant had been intoxicated on the night in question, the evidence does not support his argument that he has stopped drinking and, therefore, is less likely to reoffend. The evidence demonstrates that appellant continues to have a serious and unaddressed substance abuse problem. Appellant tested positive for marijuana at his plea hearing and admitted in both his presentence interview and psychiatric examination that he still consumed alcohol.
 {¶ 77} Further, appellant argues that he has demonstrated genuine remorse and is less likely to reoffend for that reason. Appellant contends that he acknowledged at the sentencing hearing that his behavior was inappropriate and took responsibility for his actions. This is void of any merit. Our review of the transcript fails to indicate appellant has taken any responsibility for his actions. He in fact attempted to profess his innocence at the hearing. The record as a whole clearly demonstrates appellant's cavalier attitude toward his offense and that any alleged remorse was not genuine.
 {¶ 78} Appellant left the victim in the driveway nude and bleeding, while be bragged to the others about the rape, and described the victim as a "stupid drunk" and an "easy girl." Appellant stated to Fabian, during the presentence interview, that he felt the whole incident was "blown out of proportion." Also, appellant suggested to Fabian that he welcomed prison because it would give him a free education. This course of conduct evidences a cavalier attitude. The trial court's finding that appellant lacked genuine remorse was fully supported by the record.
 {¶ 79} Appellant's arguments under his first assignment of error are not welltaken. Our review of the record reveals the trial court's findings under R.C. 2929.12(B) through 2929.12(E), which were made on the record at the sentencing hearing, were fully supported by the record.
 {¶ 80} In appellant's second assignment of error, he argues that the trial court failed to follow the mandates outlined in R.C. 2929.12, R.C. 2929.13, and R.C. 2929.14(C) and erred by sentencing him to the maximum sentence without making the requisite findings. Specifically, appellant contends the trial court erred in its application of the factors outlined in R.C. 2929.12(B) through 2929.12(E) and also erred in determining that appellant committed the worst form of the offense. We disagree.
 {¶ 81} In support of his second assignment of error, appellant reiterates his arguments that the trial court's findings under R.C. 2929.12(B) through 2929.12(E) were misguided, and, thus, the trial court erred in sentencing him to the maximum sentence. For the reasons set forth in our analysis of appellant's first assignment of error, the trial court's findings under R.C. 2929.12(B) through 2929.12(E) were fully supported by the record.
 {¶ 82} Appellant also asserts that the trial court erred by finding that he committed the worst form of the offense pursuant to R.C. 2929.14(C). We disagree.
 {¶ 83} The trial court aptly reasoned, on the record at the sentencing hearing:
 {¶ 84} "* * * First, as to the greatest likelihood of committing future crimes, I'm incorporating all of the factors, reasons, and findings that I stated previously in making recidivism more likely under Section 2929.12(D). In highlighting that, based upon what I've read from the presentence report and what I've heard you say here and at the — the plea hearing, you're not taking this case seriously. You have a very nonchalant attitude. You said, well, you welcome prison because you'll get a free education out of the experience. Yeah, the girl has a lifetime scar mentally and — or psychologically and physically. You want a free education out of this. This is not what this is about. I'm not here to educate you. * * *
 {¶ 85} "You blamed your intoxication, you blamed her intoxication on this offense. This isn't about intoxication. You committed a crime. In your past you have no operators [sic] license and failure to stop where you have a duty to stop. Those are more indications that you really don't care about the rule of law, you really don't care about following the rules of society. All of those are indications of the greater likely — or the greatest likelihood of committing future crimes.
 {¶ 86} "You refer to the victim as a stupid drunk and as an easy girl and invited other people: Hey, there's some easy girl outside I just did. In fact, you bragged about what you did in this case. You told somebody you F'd the heck out of this girl.
 {¶ 87} "In terms of the worst form of the offense, and I do find that this was the worst form of the offense, there was a struggle, this girl almost had a broken nose, her face was black and blue, her inner thighs were black and blue and scraped, she had a four-inch — that's 10 centimeters, 2.5 centimeters to the inch, laceration in her vagina — on her uterus that needed to be sutured. You beat her face, her nose, her thighs, and her arms. Of course, her arms may have been defensive wounds. You used your left fist to continue the rape. You left her nude and bleeding on the ground. She pleaded for you to stop. She was seriously injured, bleeding all over the place, and you did nothing to help her. She was extremely intoxicated. Her blood alcohol was .370 you [sic] did nothing to help."
 {¶ 88} In support of appellant's assertion that the trial court erred by finding that he committed the worst form of the offense, appellant argues that he did not use a weapon, he did not use any threats of violence, the victim's intoxication was voluntary, and this behavior was not typical of him and was a result of a poor decision made during intoxication. These contentions are devoid of merit.
 {¶ 89} Appellant may argue that he did not use a gun or a knife to perpetuate this offense, but there is evidence that appellant admitted to threatening the victim, as he told her not to move or say anything after the crime.
 {¶ 90} The victim's voluntary intoxication also fails to have any relevance to this crime and does not mitigate the seriousness of the offense. Appellant took advantage of a fifteen-year-old girl with a blood alcohol content of 0.370, and, as the trial court aptly noted at the sentencing hearing, the victim was "practically comatose when [appellant] went to work on her." Lastly, the evidence reveals that while appellant may have been drinking subsequent to the crime, he was lucid enough to brag about what he had just done. Any alleged "poor decision" causing appellant to perpetrate the offense fails to excuse the offense, its brutality, or its impact on the victim and the public at large.
 {¶ 91} The record is clear that appellant did indeed commit the worst form of the offense. Appellant brutally raped and "fisted" a fifteen-year-old girl with a blood alcohol content of 0.370, left her nude and bleeding on a driveway, and caused her a ten centimeter laceration to her vagina and uterus that needed to be sutured. The trial court did not abuse its discretion by finding that appellant committed the worst form of the offense.
 {¶ 92} We also note that the trial court complied with the dictates of R.C. 2929.14(C) and Comer when sentencing appellant to the maximum term of ten years of imprisonment. R.C. 2929.14(C) limits the discretion of a sentencing court to impose a maximum sentence only on defendants who fall into one of the four following categories: (1) those who commit the worst form of the offense; (2) those who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. In Edmonson, the Ohio Supreme Court addressed the statutory requirements for imposing a maximum sentence. The Court determined that when imposing a maximum sentence based on one of the four criteria found in R.C. 2929.14(C), R.C. 2929.19(B)(2)(d) "requires a trial court to `make a finding that gives its reasons for selecting the sentence imposed' if the sentence is for one offense and is the maximum term allowed for that offense, and requires a trial court to set forth its `reasons for imposing the maximum prison term.'" (Emphasis omitted.) Id. at 328, quoting R.C. 2929.19(B)(2)(d).
 {¶ 93} In the past, this court has held that the findings mandated by R.C. 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." State v.Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001,1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Recently, however, the Ohio Supreme Court held that when sentencing a defendant, the trial court must make its statutorily required findings at the sentencing hearing. Comer
at paragraphs one and two of the syllabus.[10]
 {¶ 94} In the instant case, the trial court stated on the record that it considered the record, oral statements, presentence report, drug and alcohol and psychological evaluation, letters in support, and principles and purposes of sentencing under R.C. 2929.11. After doing so, the trial court balanced the seriousness and recidivism factors under R.C. 2929.12. The court then found, on the record at the sentencing hearing, that "the minimum sentence in this case would demean the seriousness of the offense and would not adequately protect the public from future crime by appellant and others." As discussed above, the court then stated its findings and discussed them in detail on the record at the sentencing hearing. The court ultimately found, on the record at the sentencing hearing, that "maximum imprisonment is warranted because the offender committed the worst form of the offense and the offender poses the greatest likelihood of committing future crimes." Thus, the trial court complied with the dictates of R.C. 2929.14(C) and Comer when sentencing appellant to the maximum term of imprisonment.
 {¶ 95} In summary, the record is clear that the trial court did not err by sentencing appellant to the maximum sentence. The trial court's findings under R.C. 2929.12(B) through (E) were fully supported by the record, and the record also supports the trial court's findings that appellant committed the worst form of the offense. Appellant's second assignment of error is without merit.
 {¶ 96} We now address whether appellant's sentence conformed to the requirements of Apprendi v. New Jersey (2000), 530 U.S. 466, 490. According to Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. However, when a defendant pleads guilty, the state is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding. Id. at 488.
 {¶ 97} The United States Supreme Court followed this rule in Blakelyv. Washington (2004), 124 S.Ct. 2531. The Blakely court held that the "statutory maximum" for Apprendi purposes is not the longest term a defendant can receive under the circumstances. Id. at 2537. Instead, the "statutory maximum" is "the maximum sentence a judge may impose solely onthe basis of facts reflected in the jury verdict or admitted by thedefendant." (Emphasis sic.) Id.
 {¶ 98} Appellant pleaded guilty to rape, in violation of R.C. 2907.02(A)(2). That section prohibits an individual from engaging in sexual contact with another when purposefully compelling the other to submit by force or threat of force. Force or threat of force was, therefore, an admitted fact. Appellant's plea reveals that he agreed to a sentence anywhere from three to ten years of imprisonment.[11] At the sentencing hearing, the trial court stated on the record that it found that the minimum sentence would demean the seriousness of the offense, that appellant committed the worst form of the offense, and that appellant had the greatest likelihood of recidivism. Accordingly, the trial court followed Ohio's sentencing scheme and sentenced appellant to a maximum term of ten years of imprisonment.
 {¶ 99} From appellant's criminal history, the trial court could have found, as it did, that appellant posed the greatest likelihood of recidivism. Judicial findings based upon past criminal convictions which increase a penalty for a crime do not violate Apprendi or Blakely.
However, Ohio's sentencing scheme only authorized the trial court to sentence appellant to the maximum term because it also found that appellant committed the "worst form of the offense" and that "the minimum sentence would demean the seriousness of the crime."
 {¶ 100} In this matter, there existed a valid and unchallenged confession in addition to a voluntary plea.[12] Such a confession did not exist in Apprendi or Blakely. In those cases, the only admitted facts were those contained within the respective guilty pleas. Barring further input from the Ohio Supreme Court as to when additional evidence may be considered, we conclude the trial court may use the facts admitted in an uncontested confession, in conjunction with a voluntary plea, to determine whether a defendant committed the "worst form of the offense" and that "the minimum sentence would demean the seriousness of the crime."
 {¶ 101} Relying solely upon the facts of the indictment, the trial court arguably may not have been able to find that appellant committed the worst form of the offense. However, in this matter, the trial court could have made that finding after reviewing the valid and unchallenged confession in addition to the voluntary plea.
 {¶ 102} The trial court also found that the minimum sentence would demean the seriousness of the crime. Appellant pleaded guilty to a violation of R.C. 2907.02(A)(2), which prohibits an individual from engaging in sexual contact with another when purposefully compelling the other to submit by force or threat of force. Force or threat of force was, therefore, an admitted fact. From this, in combination with appellant's valid and unchallenged confession, the trial court could have found that "the minimum sentence would demean the seriousness of the crime."
 {¶ 103} Therefore, appellant's sentence could be calculated without resolution of factual issues beyond the admitted facts. As applied in this matter, Ohio's sentencing scheme is not unconstitutional in light ofApprendi and Blakely.
 {¶ 104} We now turn to the merits of appellant's remaining assignments of error. The crux of appellant's third, fourth, fifth, and sixth assignments of error is that the trial court denied him due process of law in regard to how it handled his request to withdraw his plea. Specifically, appellant contends that the trial court erred by failing to take any action when he stated that he was dissatisfied with counsel; by failing to grant appellant a hearing on his motion; by effectively acting as a prosecutor in considering appellant's motion; and by failing to properly inquire of appellant's understanding of his previous plea of guilty.
 {¶ 105} Pursuant to Crim. R. 32.1, a defendant may file a motion to withdraw his guilty plea prior to sentencing. The Supreme Court of Ohio has ruled that a presentence motion to withdraw a guilty plea should be "freely and liberally granted." State v. Xie (1992), 62 Ohio St.3d 521,527. However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id. at paragraph one of the syllabus. Rather, a trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. A change of heart or mistaken belief about his guilty plea does not constitute a basis that requires a court to permit the defendant to withdraw his guilty plea. State v. Lambros (1988), 44 Ohio App.3d 102,103.
 {¶ 106} The trial court is in the best position to resolve the good faith, credibility, and weight of a defendant's assertions in support of his motion to withdraw his guilty plea. State v. Smith (1977),49 Ohio St.2d 261, paragraph two of the syllabus. Accordingly, our review of a trial court's denial of a motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. Xie at 527; State v. Gibbs (June 9, 2000), 11th Dist. No. 98-T-0190, 2000 Ohio App. LEXIS 2526, at 6-7. An abuse of discretion connotes more than an error of law or judgment; instead, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. Further, when applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135.
 {¶ 107} When reviewing whether a trial court properly exercised its discretion, we apply the factors set out by the Eighth District Court of Appeals in State v. Peterseim (1980), 68 Ohio App.2d 211. In Peterseim,
the court held that a trial court does not abuse its discretion by denying a defendant's motion to withdraw a plea when the following occur: (1) the trial court made certain, pursuant to Crim. R. 11, that the defendant fully understood the nature and consequences of the original plea and that the plea was entered into voluntarily; (2) the accused was represented by highly competent counsel; (3) the defendant was given an adequate hearing on his motion to withdraw his plea and was afforded the opportunity to make all arguments in support of his motion; and (4) the lower court gave the necessary consideration to defendant's motion. Id. at 214.
 {¶ 108} In appellant's third assignment of error, he specifically argues the trial court erred by failing to take action when he stated that he was dissatisfied with his court-appointed counsel. This assignment is confusing, and we could construe this as an argument in favor of withdrawing his plea based on ineffective assistance of counsel or as an argument for new counsel. Ultimately, we find no merit in either contention.
 {¶ 109} The trial court did not abuse its discretion by denying appellant's motion to withdraw his plea based upon a claim of ineffective assistance of counsel. In order to prove a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that such deficiencies prejudiced his defense. Strickland v. Washington (1984), 466 U.S. 668, 687; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To make this showing, a defendant must overcome the strong presumption that attorneys who are licensed to practice law in Ohio provide competent representation. Bradley at 142; State v. Bird (1998), 81 Ohio St.3d 582,585.
 {¶ 110} However, in the context of a guilty plea, a defendant must also demonstrate that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart (1985), 474 U.S. 52, 58-59. See, also, State v. Parker (Dec. 30, 1997), 4th Dist. No. 96CA35,1997 Ohio App. LEXIS 6055; State v. Powers, 4th Dist. No. 03CA21,2004-Ohio-2720, at ¶ 12. If one component of the Strickland test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Bradley at 180-180, citingStrickland at 697.
 {¶ 111} Appellant contends his counsel was deficient because she would not obtain his medical records, failed to collect the victim's pants at the crime scene, and failed to return a telephone call the weekend before the sentencing hearing. Had appellant's trial counsel collected the victim's pants at the crime scene, she would have effectively tampered with evidence. Perhaps the pants should have been collected as part of a proper investigation, but the failure of appellant's counsel to do so did not constitute any deficiency on her behalf.
 {¶ 112} Further, the record is clear that appellant was not highly intoxicated on the night in question, and he refused treatment at Lake East Hospital and also refused a Breathalyzer by the police. Any hospital records available would not have detailed appellant's blood alcohol content on that night. Even if available, such results would not have exonerated appellant of the crime, and the failure of appellant's trial counsel to satisfy his curiosity does not establish any kind of deficiency. Appellant could have taken steps on his own to obtain his medical records and satisfy his curiosity.
 {¶ 113} Moreover, appellant put forth no argument that there was reasonable probability that, but for his counsel's errors, he would not have pleaded guilty. See, e.g., Hill at 58-59. There is simply no causal connection between appellant's claims and his plea. Appellant entered his guilty plea on November 14, 2002 and wished to withdraw the plea six weeks later, at the January 2, 2003 sentencing hearing. Appellant did not, and could not, effectively argue that he would not have pleaded guilty if his counsel would have collected the victim's pants, which arguably contained no evidentiary value; if his counsel would have obtained his medical records, which did not contain results of a Breathalyzer test; or if his counsel had returned his telephone call the weekend before the sentencing hearing.
 {¶ 114} After failing to put forth any reasonable and legitimate basis to withdraw his plea, appellant himself stated that he was "just not happy" with his counsel. Such unhappiness correlates with a change of heart, and it is well-established that a change of heart is not sufficient to serve as the basis for a motion to withdraw a plea. Statev. Drake (1991), 73 Ohio App.3d 640, 645; Lambros at 103. It is likely appellant wished to withdraw his plea because he appeared at a sentencing hearing, faced a definite term of imprisonment, and was scared. The trial court was in the best position to resolve the good faith, credibility, and weight of appellant's assertions. Smith
at paragraph two of the syllabus. The trial court did not find appellant's vague claims of deficient counsel to constitute a proper basis for appellant's motion, and we cannot conclude the court abused his discretion.
 {¶ 115} We will now construe appellant's third assignment of error as arguing that the trial court erred by failing to take proper action when appellant requested new counsel. Specifically, appellant argues that the court failed to make an adequate inquiry concerning his dissatisfaction with his counsel prior to sentencing. This argument is also without merit.
 {¶ 116} The Ohio Supreme Court held that "[w]here, during the course of his trial for a serious crime, an indigent questions the effectiveness and adequacy of assigned counsel * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." State v. Deal (1969), 17 Ohio St.2d 17, syllabus.
 {¶ 117} Appellant argues "[t]here was a totally inadequate inquiry by the court. * * * Because [appellant] expressed dissatisfaction with counsel[,] the court should have undertaken an inquiry concerning the source of dissatisfaction." In support of this, appellant cites to various cases which are inapplicable to this matter. In each case, the defendant wished to discharge his attorney and the court failed to make any inquiry. For example, in Deal, "[t]he difficulty * * * was that the record dos not show any investigation by the trial court into appellant's objection." Id. at 18. Accordingly, the Ohio Supreme Court reversed the trial court's judgment because the trial court failed to make any inquiry into the defendant's complaint of ineffective assistance of counsel. Id. at 18.
 {¶ 118} In State v. Prater (1990), 71 Ohio App.3d 78, 83, the appellate court recognized that a judgment can be reversed when, after the defendant protested about differences he had with his counsel, "the trial court did not personally address the defendant, but instead indicated `we are going to trial' several times." Id., quoting State v. VanMeter (July 11, 1985), 10th Dist. No. 84AP-987, 1985 WL 10073. See, also, State v.Beranek (Dec. 14, 2000), 8th Dist. No. 76260, 2000 Ohio App. LEXIS 5868, (reversing a judgment because the trial court failed to inquire into the defendant's reasons for wanting to discharge his counsel on the eve of trial).
 {¶ 119} In his appellate brief, appellant fails to point out any specific instance where the court failed to adequately inquire, but appellant instead cites generally to the right to counsel. Further, appellant made this oral motion at his own sentencing hearing. When the timing of a request for new counsel is at issue, a trial court may make a determination as to whether a defendant's request for new counsel was made in bad faith. State v. Graves (Dec. 15, 1999), 9th Dist. No. 98CA007029, 1999 Ohio App. LEXIS 5992. For example, it has been held that a motion for new counsel made on the day of trial, intimates such motion is "made in bad faith for the purposes of delay." State v. Haberek
(1988), 47 Ohio St.3d 35, 41.
 {¶ 120} As discussed earlier, appellant's claims did not amount to ineffective assistance of counsel. However, it is apparent that the trial court made more than an adequate inquiry into his claims. A summary of the lengthy exchange between appellant and the trial judge was discussed previously and encompasses the first nineteen pages of the hearing transcript. The court continually pressed appellant for a reasonable and legitimate basis to withdraw his plea, but ultimately appellant could not provide a reasonable and legitimate basis under which his counsel was deficient. Accordingly, it is clear that the trial court complied withDeal, inquiring into appellant's complaints and making the inquiry part of the record for appellate review.
 {¶ 121} In his fourth assignment of error, appellant argues that the trial court erred by failing to grant him a hearing on his motion to withdraw his plea. We disagree.
 {¶ 122} Crim. R. 32.1 requires that a trial court conduct a hearing on a motion to withdraw a guilty plea prior to sentencing "to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Xie at paragraph one of the syllabus. "While a trial court is not required to schedule a separate hearing on such a motion, some attempt must be made to consider the arguments in support." State v.Glavic (2001), 143 Ohio App.3d 583, 589, citing State v. Hickman
(June 18, 1999), 11th Dist. No. 98-P-0024, 1999 Ohio App. LEXIS 2819. A trial court can meet the requirements of Crim. R. 32.1 simply by asking the defendant his reasons for his motion to withdraw his plea. Glavic
at 588-589.
 {¶ 123} In the instant matter, the trial court did not recess the sentencing hearing and schedule a separate hearing for appellant's motion. However, it is clear that the trial court considered the arguments in support of appellant's motion as was required by Xie andGlavic and did, in fact, hold a hearing. The trial judge and appellant discussed appellant's motion to withdraw his plea, and the judge continually pressed appellant for a reasonable and legitimate basis to withdraw his plea. These discussions encompass the first nineteen pages of the transcript of the sentencing hearing and were detailed above. At one point in this discussion, the judge even stated, "[i]s there anything further that either side wants to put on the record with regard to thisRule 32.1 hearing?" (Emphasis added.)
 {¶ 124} Our review reveals that the trial court conducted a hearing, and an adequate one, to determine whether there existed a reasonable and legitimate basis for appellant to withdraw his plea. Following Xie andGlavic, the trial court complied with Crim. R. 32.1 and afforded appellant a hearing on his motion. Appellant's fourth assignment of error is not well-taken.
 {¶ 125} In his fifth assignment of error, appellant argues that the trial court erred by denying him a fair tribunal when considering his motion to withdraw his plea. Specifically, appellant argues that "[t]he court, in effect, was acting as a prosecutor in an attempt to dissuade [him] from pursuing his request to withdraw his plea." This assignment has some limited merit, although such error is harmless.
 {¶ 126} The lengthy exchange between the trial court and appellant demonstrates two things. First, the trial court pressed appellant to articulate his claims of dissatisfaction with his trial counsel in order to give appellant a fair hearing and preserve the claims on the record for appellate review. Second, in this inquiry, the court questioned appellant as to whether he understood the practical implications of withdrawing his plea if the court allowed him to do so. The court detailed some of the evidence against appellant and explained that this was not a sympathetic case.
 {¶ 127} Although we understand the trial judge's proper role was to confirm that appellant understood the consequences of withdrawing his plea, we highlight two instances were the trial court crossed the line of appropriateness. First, the trial judge outlined what would be a "parade of horrors" if appellant were to withdraw his plea. The trial judge indicated that, if appellant withdrew his plea, he would be indicted "on a multiple number of offenses, including * * * the rape * * *; felonious assault, which carries an additional eight years in prison; [and] kidnapping, which carries an additional ten years in prison; child endangerment[, which carries] another eight years in prison."
 {¶ 128} The trial court also indicated that, if appellant were to be convicted on all those charges, and if the judge could think of the appropriate reason, the court could sentence appellant to maximum terms on all charges, to be served consecutively.
 {¶ 129} Next, the trial judge misinformed appellant as to his eligibility for judicial release. An offender is ordinarily eligible for judicial release when he is sentenced to a stated prison term of ten years or less as long as the term is not mandatory or the offender has served the mandatory term. R.C. 2929.20(A). However, according to R.C 2971.03, an offender convicted of rape is never eligible for judicial release.
 {¶ 130} In the instant matter, the trial judge stated to appellant, "[i]n fact, if I were to sentence you under a circumstance where you — you're found guilty of multiple offense and I send you to prison for more than ten years, even I can't let you out. If I send you to prison for ten years, even if I give you the maximum on this, I could still let you out. However, if I give you more than ten years, even I can't let you out. No one can let you out. The Parole Board doesn't have the authority to let you out, I'm the only one that can. But if I give you more than ten years, even I can't let you out * * *."
 {¶ 131} We understand the trial judge was working without the benefit of a written motion to withdraw the plea. Presumably such a motion would have permitted the trial court time to prepare for this exchange. Nevertheless, the trial court clearly is accountable for misinforming appellant about his prospects for judicial release. Had appellant withdrawn his motion at this point, the above dialogue might have provided sufficient ground for a reversal. However, appellant did not withdraw his motion and so was not persuaded or prejudiced by the judge's arguments.
 {¶ 132} As a result, these errors had no effect on appellant's effort to withdraw his plea. Even after hearing about the "parade of horrors," and even after the trial court misinformed him about his prospects for judicial release, appellant maintained his wish to withdraw his plea. Thus, the court's inquiry did not dissuade appellant from attempting to withdraw his plea. As such, the trial court's errors amount only to harmless error. Appellant's fifth assignment of error is not well-taken.
 {¶ 133} In his sixth assignment of error, appellant argues the court should have taken further corrective action to inquire as to whether appellant understood his guilty plea. Appellant's argument under this assignment is muddled and confusing. It is not clear whether appellant argues that he did not know what he was doing when he originally made his plea or that he did not know what he was doing when he attempted to withdraw his plea. Regardless, the arguments are without merit.
 {¶ 134} We will first address any argument that appellant did not know what he was doing when he originally pleaded guilty. Our review demonstrates that appellant never argued at the hearing that he did not understand what he was doing when he made plea or that he was confused at any time. In actuality, appellant indicated that he fully understood what he was doing when he pleaded guilty. According to appellant, he agreed to the plea bargain "[b]ecause accepting the plea bargain has a less term. I was facing a lot more years in prison." Further, at the hearing, appellant wished to withdraw his plea because he was dissatisfied with his counsel, not because he did not understand what he was doing when he made the plea. Accordingly, we are not permitted to consider this argument because it was never articulated at the trial level.
 {¶ 135} Despite this, we will address the merits of the argument, and it is not welltaken.
 {¶ 136} First, appellant failed to submit a transcript of the plea hearing for this court to review when considering his appeal. Without a transcript, this court "must presume the regularity of those proceedings and the subsequent judgment." State v. Pearson, 11th Dist. Nos. 2002-G-2413 and 2002-G-2414, 2003-Ohio-6962, at ¶ 11. See, also, Statev. Brown, 1st Dist. No. C-010755, 2002-Ohio-5813, at ¶ 16. Accordingly, we must assume the trial court complied with Crim. R. 11 and made certain that appellant fully understood the nature and consequences of his original plea and entered into the plea voluntarily.
 {¶ 137} Appellant's written plea itself also raises a presumption that the plea was entered into knowingly, voluntarily, and intelligently.State v. Whiteman, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, at ¶ 22. See, also, Crim. R. 11. Appellant's written plea, dated November 14, 2002, signed by appellant himself, recites that appellant understood he was giving up certain constitutional rights and that the trial court informed him of rights connected with proceeding to trial. The written plea signed by appellant also states:
 {¶ 138} "I hereby state that I understand these rights and privileges and the possible consequences of a guilty plea. I am voluntarily pleading guilty of my own free will. I understand that this written plea of guilty constitutes an admission which may be used against me at a later trial. By pleading guilty I admit committing the offense and will tell the judge the facts and circumstances of my guilt." These facts negate any contention that appellant did not know what he was doing when he entered his plea. Appellant has put forth no specific evidence to rebut this presumption and indicate he did not know what he was doing. The argument is not well-taken.
 {¶ 139} Appellant's argument that the trial court erred by failing to inquire as to whether he knew what he was doing when attempting to withdraw his plea is also without merit. Indeed, appellant vacillated at the hearing between sticking with his plea and moving to withdraw his plea, but ultimately appellant desired to withdraw his plea. As discussed above, the hearing transcript clearly demonstrates that the trial judge specifically detailed the consequences of appellant's guilty plea and the consequences of withdrawing his plea. Any argument that the trial court should have taken further corrective action to ensure appellant knew what he was doing when attempting to withdraw his plea is not well-taken.
 {¶ 140} Accordingly, the trial court did not abuse its discretion by failing to take proper action when appellant wished to withdraw his plea. Appellant's sixth assignment of error is without merit.
 {¶ 141} To summarize appellant's assignments regarding the hearing, appellant's third, fourth, fifth, and sixth assignments of error are without merit. At this point, we emphasize that the trial court clearly complied with the four-pronged test outlined in Peterseim when overruling appellant's motion to withdraw his plea. The foregoing discussion demonstrates that (1) the trial court made certain, pursuant to Crim. R. 11, that the defendant fully understood the nature and consequences of the original plea and that the plea was entered into voluntarily; (2) appellant's counsel was competent; (3) appellant was given an adequate hearing on his motion to withdraw his plea; and (4) the trial court gave the necessary consideration to defendant's motion. Further, although the trial court may have erred by attempting to dissuade appellant from pursuing his oral motion and by misinforming appellant as to his prospects for judicial release, these missteps did not prejudice or persuade appellant to withdraw his motion and maintain his plea. As such, the trial court's errors amounted only to harmless error.
 {¶ 142} Appellant's six assignments of error are without merit. We hereby affirm the judgment of the trial court.
Rice, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] On Saturday, August 17, 2002, at approximately 1:10 a.m., Painesville Police Officer Simmons ("Officer Simmons") was dispatched to Lake East Hospital's emergency room ("the ER") for an assault report. At that time, Officer Simmons encountered appellant in the triage area of the ER. Appellant reported that he had been assaulted while at a party on St. Clair Street. He reported that he had consensual sex with a girl at the party, but when the girl's brother found out, the brother attacked him. According to the police version, "[appellant's] face, hands, shirt, and pants were covered with blood. His left eye was swollen and red, and there was a 1.5" laceration above [appellant's] left eye. * * * [Appellant] admitted to having been drinking, and there was a slight odor [of alcohol] about his person. But it did not appear that he was intoxicated." Appellant did not want to pursue charges and left the ER without being treated.
[2] The transcript from the sentencing hearing reveals that appellant refused such a test. The record also indicates that appellant's blood alcohol content was not tested when he arrived at Lake East Hospital.
[3] A transcript of the plea hearing has not been made part of the record in this matter.
[4] A transcript of the plea hearing has not been made part of the record in this matter.
[5] Appellant contends this incident was a result of him breaking up or intervening in an argument between his parents. No conclusive evidence of this assertion exists in the record.
[6] The record does not reveal how the trial court was aware of this.
[7] A transcript of the original plea hearing has not been made part of the record in this matter.
[8] As discussed later, this is an incorrect statement of law.
[9] The record does indicate that appellant refused treatment at the hospital and also refused a Breathalyzer from the Mentor police.
[10] Comer only addressed the trial court's duty with respect to sentencing an offender to a non-minimum sentence or consecutive sentences. However, in State v. Newman, 100 Ohio St.3d 24, 2003-Ohio-4754, the Supreme Court of Ohio held that Comer was not limited to non-minimum and consecutive sentences and should be applied to all sentences.
[11] The transcript of the sentencing hearing seems to indicate that the parties may have agreed to a sentencing recommendation. However, nothing in the record affirmatively indicates the existence of such a recommendation.
[12] The record indicates that appellant's original confession was not made at the time of his guilty plea. However, we are uncertain as to whether appellant re-articulated his confession at his plea hearing, as a transcript of that hearing was not made part of the record in this matter.