[Cite as *State v. Moore*, 2014-Ohio-5182.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-G-3183** |
| JOSHUA M. MOORE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 13 C 000110.

Judgment: Affirmed.

*James R. Flaiz,* Geauga County Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Patricia J. Smith* and *Thomas Grist,* 9442 State Route 43, Streetsboro, OH 44241 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Joshua M. Moore, appeals his sentence in the Geauga County Court of Common Pleas following his guilty plea to aggravated robbery and obstructing justice. Appellant argues that the trial court failed to make the statutory findings required to support his consecutive sentences and that his sentence was disproportionate. For the reasons that follow, we affirm.

{¶2} On August 23, 2013, appellant was charged in a five-count indictment with complicity to commit aggravated robbery, a felony of the first degree, with a firearm specification and a forfeiture specification concerning his Colt M4 rifle and a Smith & Wesson .38 revolver (Count One); complicity to commit kidnapping, a felony of the first degree, with the same firearm and forfeiture specifications (Count Two); obstructing justice, a felony of the third degree (Count Three); obstructing justice, a felony of the third degree, with a forfeiture specification concerning his 2011 Dodge Ram pickup truck (Count Four); and complicity to commit theft of drugs, a felony of the fourth degree, with a firearm specification and a forfeiture specification concerning the same two firearms (Count Five). Appellant pled not guilty.

{¶3} On October 28, 2013, appellant pled guilty to Count One, complicity to commit aggravated robbery, a felony of the first degree, with the firearm specification, and Count Three, obstructing justice, a felony of the third degree. In exchange for appellant's guilty plea, the state moved to dismiss the remaining counts and specifications. Appellant agreed to the forfeiture of the two firearms listed in the indictment. The court accepted appellant's guilty plea; found him guilty; and ordered a pre-sentence investigation.

{¶4} The case came on for sentencing on January 8, 2014. The prosecutor advised the court of the details surrounding appellant's crimes. Appellant and his cousin Johnathan Moore planned to rob the Newbury Pharmacy, a small, family-owned drug store in Newbury Township, of its controlled substances. In devising their plan, appellant used his computer to look up the Newbury Pharmacy on Google Maps. He obtained a map to the pharmacy and an escape route. Appellant and his cousin

2

enlisted the services of two men from Detroit, Zachary Tiggs and Reshad Muhammad, to act as the gunmen.

{¶5} Upon their arrival in the Cleveland area, Tiggs and Muhammad met with the Moores and agreed to participate in their plan to rob the pharmacy. Pursuant to the plan, on July 11, 2013, Johnathan drove Tiggs and Muhammad to the Newbury Pharmacy. Johnathan waited for Tiggs and Muhammad outside the store in the parking lot in his car with an M4 rifle, a military weapon that appellant gave him, while Tiggs and Muhammad went in the store armed with a loaded .38 revolver that the Moores gave them. Appellant drove to the nearby West Woods Park and waited for his three co-conspirators to arrive after they robbed the store.

{¶6} Once inside the store, Tiggs distracted Colleen Martin, the wife of the owner/pharmacist Robert Martin, while Muhammad went behind the pharmacy counter armed with a handgun. Muhammad pointed the revolver at Mr. Martin's face and demanded that he turn over all of the store's controlled substances.

{¶7} At Muhammad's command, Mr. Martin placed thousands of controlled substance pills in a bag. Muhammad grabbed the bag. He and Tiggs then ran out of the store and jumped in the getaway car driven by Johnathan.

{¶8} Johnathan then drove Tiggs and Muhammad to the location in West Woods Park where the four co-conspirators agreed to meet. Tiggs and Muhammad jumped into appellant's pickup truck. They gave him the drugs they stole and returned the two guns to him. Appellant then drove them to the Moores' house in Ashtabula. Johnathan drove there separately in his car. On arrival at the Moores' house, the four co-conspirators divided the stolen narcotics.

3

{¶9} Appellant then drove Tiggs and Muhammad to the Greyhound bus station in Cleveland for their return trip to Detroit. On the way to Cleveland, appellant withdrew $80 from an ATM machine to pay for their bus tickets.

{¶10} After obtaining the license plate number of Johnathan's car from a witness, Geauga County Sheriff's detectives obtained his address and went to the Moores' house. At that time the detectives had not yet identified the gunmen. During the detectives' questioning, appellant lied to them to conceal the identity of the gunmen. However, Johnathan gave the detectives information that led to their arrest. When the gunmen were arrested in Detroit for this crime, police found several containers of prescription narcotics on them that had been stolen during the robbery. The detectives also found appellant's M4 rifle and several bottles of narcotics hidden in the Moores' home. Appellant and Johnathan were arrested. The detectives learned that appellant and Johnathan planned to commit another robbery at a pharmacy in Ashtabula County at around that time; however, that plan was aborted. Appellant's three co-conspirators were convicted and sentenced for their roles in this crime.

{¶11} Colleen Martin, the pharmacist's wife, who was working in the store at the time, told the court that after the robbery, she and Robert ran outside to get a description of the getaway car. She said that every day she and her husband are haunted by the memory of the four co-conspirators "scoping out" their community and her family's store. She said that every day, she and her husband relive the terrifying events of this robbery in their minds. She said that while appellant did not actually come in the store, he was part of the plan and made it happen, and in her view was just

4

as actively involved and guilty as the other three. In light of the trauma appellant had caused her and her family, she asked the court not to be lenient in sentencing him.

{¶12} Robert Martin, the owner/pharmacist, said that he and his wife are worried that the two men who were brought in from Detroit are affiliated with a gang whose members will retaliate against them because they were caught. They are always worried and on edge that they are being watched and targeted. Mr. Martin has had many sleepless nights and many nights of waking from nightmares in which a gun is pointed at him. He said his wife and three young children have also had many terrible nightmares. Every time someone unfamiliar walks into the store, he becomes anxious and his stomach churns. He said the pain these criminals have caused his family and employees is immeasurable. His children worry about him and his wife going to work each day. He said that he and his wife are afraid that when the four co-conspirators are released from prison, they will come after them. He asked the court to sentence appellant to the maximum sentence.

{¶13} Renee Krause, an employee of the pharmacy, said that at the time of the robbery, Muhammad pointed a gun at her and then at her boss, Robert Martin. She said that for the first time in her life, she is afraid to go to work. She said that, while she used to enjoy new people coming in the store, now, every time someone new comes in, she panics and is afraid she or her fellow employees will be hurt. She said she cannot travel any further than the grocery store or to her relatives' homes because she is afraid she will be victimized. She often has nightmares of that day and her sleep has been adversely affected. She is now treating with a therapist and takes anti-anxiety medication. She lives in constant fear, anxiety, and anger.

**{¶14}** The trial court dismissed the counts and specifications in the indictment to which appellant did not plead guilty. The court sentenced him on Count One, complicity to commit aggravated robbery, to nine years in prison, plus an additional three years on the firearm specification attached to that count. The court also sentenced appellant to 12 months in prison on Count Three, obstructing justice. The court ordered all sentences to be served consecutively, for a total of 13 years in prison.

**{¶15}** Appellant appeals his sentence, asserting two assignments of error. For his first assigned error, he alleges:

**{¶16}** "The trial court erred when it imposed consecutive sentences without making the required findings pursuant to R.C. 2929.14(C)(4)."

**{¶17}** Appellant argues the trial court failed to make the factual findings necessary to sentence him to consecutive sentences under the newly amended R.C. 2929.14(C)(4). In contrast, the state argues the trial court's findings on the record at sentencing satisfied the requirement for findings in that statute.

**{¶18}** As a preliminary matter, we note that appellant's consecutive three-year prison sentence for the firearm specification is statutorily mandated. R.C. 2929.14(B)(1)(a)(ii); R.C. 2929.14(C)(1)(a). Thus, the only consecutive term at issue is the 12 months imposed for obstructing justice.

**{¶19}** After the enactment of H.B. 86, which became effective on September 30, 2011, a sentencing court is required to make certain factual findings when imposing consecutive sentences. Pursuant to amended R.C. 2929.14(C)(4), consecutive sentences can be imposed if the court finds: (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender, and (2) consecutive

6

sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find one of the following three factors:

{¶20} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing * * *[;]

{¶21} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and *the harm caused by two or more of the multiple offenses so committed* was so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct[; or]

{¶22} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. (Emphasis added.)

{¶23} Subsequent to this amendment in the consecutive sentencing law, Ohio Appellate Districts have held that R.C. 2929.14(C)(4) requires trial courts to make the foregoing findings when imposing consecutive sentences. *State v. Stalnaker*, 11th Dist. Lake No. 2011-L-151, 2012-Ohio-3028, ¶15 ("H.B. 86 * * * amends R.C. 2929.14 and requires fact finding for consecutive sentences.").

{¶24} While the requirement that fact finding occur was re-enacted by H.B. 86, the requirement that a sentencing court give reasons for imposing consecutive sentences, which existed under former R.C. 2929.19(B)(2), was not re-enacted. *State v. Frasca,* 11th Dist. Trumbull No. 2011-T-0108, 2012-Ohio-3746, ¶57. Thus, a sentencing court is not statutorily required to give reasons for a consecutive sentence.

7

*Id.* "[I]t is arguably easier to impose consecutive sentences today than it was under former R.C. 2929.14(E)(4) because the revived version did away with the requirement that the court justify its findings by giving reasons for making those findings." *State v. Venes,* 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶16.

{¶25} Following the enactment of H.B. 86, several appellate districts have adopted the standard of review set forth in R.C. 2953.08(G)(2) when reviewing felony sentences. *See e.g. State v. Rodeffer*, 2d Dist. Montgomery Nos. 25574, 25575, and 25576, 2013-Ohio-5759, ¶29; V*enes, supra*, at ¶10.  R.C. 2953.08(G)(2) provides:

{¶26} The appellate court may * * * modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division *if it clearly and convincingly finds* either of the following:

{¶27}  (a) *That the record does not support the sentencing court's findings* under * * * division * * * (C)(4) of section 2929.14 * * * of the Revised Code * * *; [or]

{¶28} (b) That the sentence is otherwise contrary to law.  (Emphasis added.)

{¶29} "Because a trial court is statutorily mandated to make findings under R.C. 2929.14(C)(4) before it can impose consecutive sentences, the findings are not within the court's discretion.  In this respect, post-H.B. 86, it follows that the standard set forth

8

under R.C. 2953.08 is a more appropriate standard for an appellate court's review of consecutive sentences." *State v. Cornelison*, 11th Dist. Lake No. 2013-L-064, 2014-Ohio-2884, ¶35. In discussing the statutory standard of appellate review, the Eighth District in *Venes, supra*, stated:

> **{¶30}** It is * * * important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

**{¶31}** Contrary to appellant's argument, the trial court made *all* of the factual findings required by R.C. 2929.14(C)(4)(b) to support his consecutive sentences under that subsection. Specifically, the court found that consecutive prison terms were necessary to protect the public from future crime and to punish appellant. R.C. 2929.14(C)(4). Further, the court found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. *Id.* In addition, the court found that at least two of the offenses were committed as part of one or more courses of conduct, and *that the harm caused by two or more of the multiple offenses* was so great or unusual that no one prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of appellant's conduct. R.C. 2929.14(C)(4)(b).

9

{¶32} While the trial court was not required to give reasons for imposing consecutive sentences, the court did so. The chief reason offered by the court was the active role appellant played in planning and carrying out this crime. Appellant looked up the Newbury Pharmacy on his computer; determined how to get there; and how to escape once the robbery was completed. After the robbery, Tiggs and Muhammad gave the stolen drugs to appellant and returned the two guns to him. Appellant used his pickup truck as a getaway vehicle to take Tiggs and Muhammad to his house in Ashtabula where they, along with Johnathan Moore, divided the stolen drugs. Appellant then drove the gunmen to the bus station in Cleveland and purchased tickets for them to return to Detroit.

{¶33} The court rejected appellant's contention that his cousin was the "evil genius" behind this crime and that he merely went along with it to help his cousin, noting that appellant's involvement was too intricate and too crucial. The court also rejected his argument that he did not share in the stolen drugs.

{¶34} Further, the court found that appellant and Johnathan provided the guns used to execute the robbery and that the rifle appellant gave to Johnathan to use belonged to appellant. Moreover, the court found that appellant knew these guns, or at least the .38, were going to be used to rob the pharmacy. The court found that this was an organized criminal activity. This was a well-planned crime committed with appellant's full support and participation. The court found that appellant also planned to rob a pharmacy in Ashtabula County. The court found that appellant was a real danger to society and that he caused great psychological harm to the victims.

{¶35} The only finding of the trial court with which appellant takes issue is the finding that harm resulted from two or more of the offenses committed. Such finding is necessary to support consecutive sentences imposed under R.C. 2929.14(C)(4)(b), the subsection used by the court to support appellant's sentence. While appellant concedes that harm resulted from the armed robbery, he argues the record does not support the court's finding that harm also resulted from his commission of the offense of obstructing justice. We do not agree.

{¶36} First, we note that R.C. 2929.14(C)(4)(b) simply requires a court to find the harm that is caused by two or more offenses was so great or unusual that no single prison term would reflect the seriousness of the conduct. Nothing in the language of the statute suggests each of the multiple offenses must cause some harm independent from the other(s); rather, the facts of a case must simply support a finding of great and unusual harm from the multiple offenses that were a part of at least one course of conduct.

{¶37} In any event, we find that harm resulted from appellant's commission of the offense of obstructing justice. R.C. 2921.32(A)(2), obstructing justice, as pertinent here, provides: "No person, *with purpose to hinder* the discovery, apprehension, prosecution, conviction, or punishment of another for crime * * * shall * * * [p]rovide the other person * * * with money, transportation, * * * or other means of avoiding discovery or apprehension * * *." (Emphasis added.)

{¶38} Here, as a result of the plan developed by appellant and his cousin, the gunmen stole a large amount of controlled substances from the victims, using the handgun appellant and Johnathan provided to them. Part of the plan was to assist

11

Tiggs and Muhammad in getting out of town as soon as the robbery was accomplished. By providing Tiggs and Muhammad with money and transportation in order to hinder their discovery, apprehension, prosecution, conviction, or punishment, appellant committed the crime of obstructing justice, in violation of R.C. 2921.32. The Legislative Committee's comment to R.C. 2921.32 states:

{¶39} [R.C. 2921.32] consolidates and extends similar provisions in former Ohio statute law, so that the new section is roughly equivalent to the common law crime of being an accessory after the fact. This section applies to improperly aiding any offender * * *, and also specifies a number of prohibited acts in aid of an offender which were not covered under former law * * *.

{¶40} By helping the gunmen flee to Detroit, appellant potentially made it more difficult for the victims to prosecute and to receive restitution and increased their fear of retaliation. Thus, by obstructing justice, appellant caused additional harm to the victims.

{¶41} Moreover, "obstructing justice" is an "offense against justice" under R.C. Chapter 2921. The word "hinder" as used in R.C. 2921.32 ("to hinder the discovery, apprehension, [or] prosecution * * * of another") is defined as "to do harm to: impair, damage * * *." Webster's Third New International Dictionary 1070 (1986). Thus, by providing Tiggs and Muhammad with money and transportation in order to hinder their discovery, apprehension, or prosecution, appellant additionally "harmed" the administration of justice, i.e., the public.

{¶42} In view of the foregoing analysis, the record thus supports the finding that harm resulted from both offenses to which appellant pled guilty. We therefore hold the

trial court's imposition of consecutive sentences was not clearly and convincingly contrary to law.

**{¶43}** One final issue must be addressed. The trial court, in imposing consecutive sentences, made appropriate statutory findings pursuant to R.C. 2929.14(C)(4) at the sentencing hearing. It did not, however, incorporate those findings into the judgment on sentence. In *State v. Bonnell*, 140 Ohio St.3d 109, 2014-Ohio-3177, the Ohio Supreme Court recently concluded that, because a court speaks through its judgment entry, it "should also incorporate its statutory findings into the sentencing entry." *Id.* at ¶29. The Court emphasized that a "word-for-word recitation of the language of the statute is not required" so long as the appellate court can discern that the trial court engaged in the correct analysis and determine that the record supports the findings. *Id.*

**{¶44}** The Court further observed that a sentencing court's "inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing *does not* render the sentence contrary to law[.]" *Id.* at ¶30. Instead, the court ruled that such an error is merely a clerical mistake that can be corrected via a nunc pro tunc entry to reflect the findings that were made in open court. *Id.* Such an omission does not require a new sentencing hearing. *Id.*

**{¶45}** In this matter, the trial court made the necessary findings at the sentencing hearing that were supported by the record. These necessary statutory findings, however, were omitted from its judgment entry. The omission in this matter was merely clerical and, as a result, was capable of correction through a nunc pro tunc entry. Pursuant to a temporary remand order entered by this court, the trial court

corrected the omission by way of a nunc pro tunc judgment entry filed September 29, 2014.

**{¶46}** Appellant's first assignment of error is overruled.

**{¶47}** For his second and final assignment of error, appellant contends:

**{¶48}** "The trial court abused its discretion in imposing upon Appellant a disproportionate, excessive, and unreasonable sentence."

**{¶49}** Appellant challenges the term of years selected by the trial court in imposing sentence. The trial court has full discretion to impose a prison sentence within the statutory range. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶37. If the trial court had imposed maximum, consecutive sentences, appellant would have been given 17 years in prison. Since he was sentenced to 13 years, his sentence was within the statutory range.

**{¶50}** Appellant argues that in making the following comment, the trial court acted in an arbitrary fashion:

**{¶51}** I regard the planning * * *, the financing and the strategic brains

behind this event, * * * as being worse than what Tiggs and

Muhammad did. Muhammad became * * * a tool to the extent he

was much younger. * * * You guys, the Moore relatives, were the

planners * * * and you implemented this plan. * * * So I am imposing

a more strict sentence.

**{¶52}** Appellant argues this comment is evidence of an arbitrary attitude on the part of the trial court and shows the court's sentence was an abuse of discretion. However, to the contrary, the record supported the court's finding that appellant was the

14

mastermind behind this crime and actually implemented it, while Tiggs and Muhanmad were merely pawns who followed the Moores' orders. Thus, the court's comment was eminently reasonable and provided a sound rationale for the sentence.

{¶53} Next, appellant suggests his sentence was disproportionate because in another case decided by another district a lesser sentence was imposed on another offender for similar crimes. However, this court has repeatedly held that "sentencing consistency is not derived from the trial court's comparison of the current case to other sentences given to similar offenders for similar offenses." *State v. Greitzer*, 11th Dist. Portage No. 2006-P-0090, 2007-Ohio-6721, ¶24. Rather, it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency. *Id.* Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory factors and guidelines. Here, the trial court properly considered these factors and guidelines as set forth in R.C. 2929.11 and R.C. 2929.12, and thus did not abuse its discretion in sentencing appellant.

{¶54} Appellant's second assignment of error is overruled.

{¶55} For the reasons stated in the opinion of this court, appellant's assignments of error lack merit and are overruled. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

15