HUNZIKER, BUILDING INSPECTOR, APPELLANT, *v.* GRANDE ET AL., APPELLEES.

(No. 44682—Decided November 10, 1982.)

*Mr. Dale C. Feneli,* for appellant.
*Mr. Michael T. Gavin* and *Mr. David B. Cathcart,* for appellees.

PRYATEL, C.J. Plaintiff, Al Hunziker, was the Building Inspector for the city of Highland Heights on July 11, 1978 when this action was commenced. As building inspector, it was his responsibility to enforce the zoning code of that municipality. The complaint sought injunctive relief against Dominic and Mary Grande to prevent their operation of a retail nursery on land within the city of Highland Heights.

The following findings of fact were handed down by the court following the trial:

"1. That the defendants, Dominic Grande and Mary Grande, own a nursery consisting of a parcel of land at 5323 Wilson Mills Road in the City of Highland Heights, Ohio;

"2. That between thirty and forty years ago, Case and John Mahlstede owned the nursery, which was then seventy acres in size. It was the Mahlstedes who erected all of the structures which are presently on the property. The green-

house was used to propagate plants during the winter. These plants were placed in outdoor beds in the spring. At one time, the nursery had over twenty beds. Each bed was six feet wide and ranged in length from thirty to one hundred twenty-five feet;

"3. That when the property was owned by the Mahlstedes, they advertised with a sign in front of the premises which stated 'Mahlstede nursery';

"4. That one of the existing sheds on the nursery was specifically designed by the prior owners for retail sales;

"5. That prior to 1963, the nursery was engaged in both wholesale and retail business. Approximately 15% of the Mahlstedes' business was retail;

"6. That in 1963, the City of Highland Heights enacted zoning ordinances. The subject property was zone [sic] in the U-1 class (one-family residential);

"7. That the nursery consists of the family home, a shed, a barn and a greenhouse. Several plant beds are located on the property where stock is kept.

"8. That various gas stations and commercial enterprises are located approximately one-half mile to the east. A church is located across the street. The parcels of land to the immediate west of the property are in the Village of Richmond Heights and contain single-family residences. To the immediate east of the property is Radford Drive. Radford Drive is part of a residential subdivision which was originally part of the subject nursery;

"9. That the only means of ingress and egress to the nursery is a driveway which connects to Wilson Mills Road. At this point, Wilson Mills road is a major thoroughfare with two lanes of traffic in each direction. Richmond Mall is located approximately three hundred yards to the west of the property on Wilson Mills Road; and

"10. That presently, approximately 40% of the sales made by the nursery are retail."

It was further admitted by the plaintiff that the nursery was indeed a valid nonconforming use.

At trial, Mr. Grande testified that he bought this land knowing that it was a nonconforming use and that he owned more land across the street which he also uses for the same purposes. Grande was given permission by the mayor of Highland Heights in 1962 or 1963 to do so. Grande further testified that the city allowed him to improve a driveway from Wilson Mills Road and to increase parking facilities for up to five cars. He was denied permission for an access drive to Radford Drive on the east side of the lot. Grande stated that he has had no complaints from neighbors and that they often came in to buy plants from him.

Wendell Phillips, a city planning consultant, then testified as to the effects this type of business would have on a residential neighborhood. He stated that the main difference in wholesale and retail establishments is in the traffic volume and usage. Wholesale outlets would be busiest during normal workday hours, while retail would be busiest in the evenings and on weekends.

The trial court refused to issue an injunction preventing the Grandes from operating a wholesale and retail nursery. It is from this judgment that the plaintiff now appeals citing three assignments of error. The first two being interrelated will be dealt with together:

"I. The trial court erred in holding that the terms 'wholesale' and 'retail' are not defined in the zoning ordinance of the city of Highland Heights, Ohio and, as a result thereof, any ambiguity in the use of those words should be construed against the city.

"II. The trial court erred in holding that the alteration of a business use from one that is principally wholesale and only incidentally retail to one that is both wholesale and retail, equally, is only an in-

crease of business and, therefore, does not constitute an unlawful extension or expansion of a non-conforming use."

Appellant contends that the words "wholesale" and "retail" should be given their common, ordinary meanings when applied to the zoning ordinances of Highland Heights as required by Section 101.03 (a) of the Codified Ordinances of the city of Highland Heights:

"All words and phrases shall be construed and understood according to the common and approved usage of the language, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

In support of these common meanings appellant cites two dictionaries as containing similar and well-known definitions of these words.[1]

While we agree with appellant on this point, it is in no way dispositive of this case. The definitions of these words are not at issue. Appellant has already conceded that at all times a wholesale and retail business has been conducted from these premises.

The central issue in the instant case is whether the increase in the proportion of retail sales as opposed to wholesale sales constitutes an unlawful extension or expansion of a nonconforming use. We find that it does not.

An increase in the volume of business alone does not constitute an unlawful extension of a nonconforming use where the nature of the land is virtually unchanged. *State, ex rel. Zoning Inspector,* v. *Honious* (1969), 20 Ohio App. 2d 210 [49 O.O.2d 289]; *Worthington* v. *Everson* (1967), 10 Ohio App. 2d 125 [38 O.O.2d 234]. Nonconforming use restrictions are meant to apply to the area of the use and not to inventory. See *State, ex rel. Zoning Inspector,* v. *Honious, supra.*

In the case at bar, there has been no increase in the amount of land that is used as a nonconforming use. The Grandes are using the same two acres whether it is for wholesale or retail sales. In fact, the wholesale and retail sales are only part of the same business or nonconforming use since both types of sales pre-dated the enactment of the zoning legislation.

Appellant may prohibit the expansion or substantial alteration or repair of existing buildings in attempting to eradicate the nonconforming use. *Akron* v. *Chapman* (1953), 160 Ohio St. 382 [52 O.O. 242]. They may even regulate those uses to the point that they wither and die. *Columbus* v. *Union Cemetery* (1976), 45 Ohio St. 2d 47 [74 O.O.2d 79]. However, they may not seek to prohibit a mere increase in the volume of business or in the proportions of that business.[2]

Accordingly, appellant's first and second assignments of error are overruled.

"III. The trial court erred in holding that the harm caused to the defendant-appellee by the injunction demanded by

---

[1] *"Retail.* To sell by small quantities, in broken lots or parcels, not in bulk, to sell directly to consumer. * * *"

*"Retailer of Merchandise.* A merchant who buys articles in gross or merchandise in large quantities, and sells the same by single articles or in small quantities. * * *"

*"Wholesale.* Selling to retailers or jobbers rather than to consumers. * * * A sale in large quantity to one who intends to resell. * * *"

*"Wholesale Dealer.* One whose business is the selling of goods in gross to retail dealers, and not by the small quantity or parcels to consumers thereof. * * *" Black's Law Dictionary (Rev. 4 Ed. 1968).

*"[R]etailing* * * *: [T]he activities involved in the selling of goods to ultimate consumers for personal or household consumption. * * *"

*"[W]holesale* * * *: [T]he sale of commodities in quantity for resale, as by a retail merchant." Webster New Collegiate Dictionary (1981).

[2] See *State, ex rel., Zoning Inspector,* v. *Honious, supra.*

the plaintiff-appellant outweighs any possible benefit to the city of Highland Heights, Ohio."

Appellant next contends that in granting the injunction, the trial court would only have been granting the municipality the power to regulate the nonconforming use.

The regulation of nonconforming uses is a valid exercise of governmental power. See *Columbus* v. *Union Cemetery, supra; Akron* v. *Klein* (1960), 171 Ohio St. 207 [12 O.O.3d 331]. However, it is a fundamental axiom that pre-existing vested rights must be recognized and protected. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365; *Smith* v. *Juillerat* (1954), 161 Ohio St. 424 [53 O.O. 340].

In the case *sub judice,* the vested rights of the Grandes must be protected. They bought a business which before the enactment of the zoning ordinances consisted of both wholesale and retail parts. The nonconforming use is not merely the operation of a wholesale nursery, but is the operation of the entire nursery including both the wholesale and retail parts which pre-dated the zoning legislation.

While we agree that some hardship is worked on the city by not gaining compliance with their zoning laws, any other decision would act as an unlawful taking of Grandes' property in contravention of the Fourteenth Amendment to the United States Constitution and to Section 19, Article I of the Ohio Constitution. Such a finding would also violate R.C. 713.15's proscription against retroactive zoning laws, which reads:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of such land

shall be in conformity with sections 713.01 to 713.15, inclusive, of the Revised Code. The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance."

Accordingly, appellant's third assignment of error is overruled.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

DAY and CORRIGAN, JJ., concur.