[Cite as *State v. Morrison*, 2014-Ohio-5467.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0018** |
| HENRY C. MORRISON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Conneaut Municipal Court, Case No. 13 CRB 736.

Judgment: Affirmed.

*Carly I. Prather,* Assistant Conneaut Law Director, City Hall Building, 294 Main Street, Conneaut, OH 44030 (For Plaintiff-Appellee).

*Judith M. Kowalski,* 333 Babbitt Road, #323, Euclid, OH 44123 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} After a bench trial in the Conneaut Municipal Court, appellant, Henry C. Morrison, was convicted of one count of theft by deception, in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree. He now appeals from that judgment. We affirm the judgment of the trial court.

{¶2} The following facts were adduced at trial: Appellant, a contractor, is a neighbor of the victims in this matter, Rand and Dorothy Mitchell. During September 2013, appellant was doing repair work on, inter alia, the Mitchells' basement walls. On

September 19, 2013, appellant approached Mrs. Mitchell with a contract to repair the home's roof. Mrs. Mitchell explained that Mr. Mitchell dealt with matters concerning home maintenance. She consequently stated she did not want to sign the contract or pay for a job without Mr. Mitchell's input.

{¶3} Shortly thereafter, appellant informed Mrs. Mitchell that he had spoken with Mr. Mitchell over the phone and informed the woman that her husband had approved the repair work. Mrs. Mitchell signed the contract and wrote appellant a check for $550. Mrs. Mitchell spoke with her husband approximately an hour later. Mr. Mitchell advised her that, while he did speak with appellant briefly about the unfinished basement project, he never authorized her to sign the contract for the roof repair or write the check. Mr. Mitchell further stated he did not authorize appellant to commence any additional work or advise him to instruct Mrs. Mitchell to sign the contract or write the check.

{¶4} According to the Mitchells, no work was ever started on the roof. And, although Mr. Mitchell asked appellant to return the money, he never did. The Mitchells reported the incident to police. Sergeant Randy Poore, of the Conneaut Police Department, investigated the matter. The sergeant attempted to contact appellant by phone and at his home, leaving his card and a phone number on appellant's door. According to Sergeant Poore, appellant neither called nor otherwise attempted to contact police.

{¶5} According to appellant, on September 19, 2013, he spoke with Mrs. Mitchell concerning some damage in the basement. Appellant indicated he was going to fix a small section, per Mrs. Mitchells' request. Later that day, appellant stated he

2

asked his fiancée, Carrie Mason, to approach Mrs. Mitchell with a contract for additional work on the home's roof. When Mrs. Mitchell told Ms. Mason she would not sign the contract without Mr. Mitchell's approval, appellant stated he visited the Mitchell residence and called Mr. Mitchell in Mrs. Mitchell's presence. According to appellant, Mr. Mitchell was busy at the time. As a result, appellant asserted he left the contract at the Mitchells' home. Appellant maintained Mrs. Mitchell later called him and explained her husband had approved the additional work. Consequently, appellant asserted he went to the Mitchells' residence and retrieved the signed contract as well as a $550 check. The check was immediately cashed.

{¶6} Appellant stated he was unable to commence the additional work because of a death in his family and an injury to his back. He also stated that Mr. Mitchell was threatening him and demanding his money back. Appellant admitted he did not return the money because he did not have it at the time. Appellant also noted he had left some tools in the Mitchells' basement. He stated he has always been willing to return the $550 to the Mitchells, but he wanted his tools back.

{¶7} Ms. Mason lived with appellant and assisted him on construction jobs as a member of his ground crew; she also handles paperwork for appellant's jobs. She stated she went to the Mitchells' residence on September 19, 2013 to present them with a new contract for additional work. Mrs. Mitchell stated she would not sign the contract without consulting with her husband. Ms. Mason left the contract with Mrs. Mitchell, pursuant to appellant's request. After Ms. Mason returned home, appellant advised her that Mrs. Mitchell had spoke with Mr. Mitchell and he had approved of the additional work. Ms. Mason was not present when the check was handed over or when the

3

contract was signed. And Ms. Mason had no additional contact with the Mitchells after September 19, 2013.

{¶8} According to Mrs. Mitchell, no contract was left with her on September 19, 2013; she additionally emphasized she was not present when appellant spoke with her husband on that date. She further maintained she did not personally speak with her husband prior to signing the contract.

{¶9} A complaint was subsequently filed charging appellant with one count of theft, in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree. After a bench trial, appellant was found guilty. The trial court sentenced appellant to 180 days in jail with 168 days suspended. Appellant was further ordered to pay restitution in the amount of $550. This appeal follows.

{¶10} To avoid redundant analyses, we shall address appellant's first and second assignments of error together. They provide, respectively:

{¶11} "[1.] The trial court erred to the prejudice of the appellant in denying the motion for dismissal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure, in that the evidence presented was insufficient as a matter of law."

{¶12} "[2.] The verdict of guilty was against the manifest weight of the evidence."

{¶13} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable

4

doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9, 901 N.E.2d 856 (11th Dist.).

{¶14} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶15} Appellant was convicted of theft by deception, in violation of R.C. 2913.02(A)(3), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception."

{¶16} With respect to sufficiency, the state presented evidence that appellant induced Mrs. Mitchell to sign the contract and pay for additional work that he never commenced. The state further produced evidence that the inducement occurred by means of deception; namely, that appellant advised Mrs. Mitchell that he spoke with Mr. Mitchell and Mr. Mitchell approved the work and desired Mrs. Mitchell to sign the contract and write the check. From this evidence, the court could infer that appellant had the purpose to deprive Mrs. Mitchell of the property when he kept and cashed the check beyond a reasonable doubt. There was therefore sufficient evidence to support the court's finding of guilt.

{¶17} Regarding the weight of the evidence, appellant first claims that, because he left tools in the Mitchells' basement, it could be inferred that he would be using those

tools while working on the roof which was the subject of the bench trial. We do not agree.

{¶18} At the bench trial, both Mr. and Mrs. Mitchell testified that they were not aware that appellant had left his tools at their residence as they had not noticed them over the five-month period appellant had left his tools there. Further, because appellant had not yet started the roofing job after an extended period of time, it would be difficult to argue that the tools were left with the intent to start the project. Appellant's argument does not militate heavily against the court's verdict.

{¶19} Appellant next notes Mrs. Mitchell had authority to write the check and was ostensibly competent to sign the contract; he further maintains he was willing to commence and finish the work that was the subject of the contract. As a result, appellant maintains the state failed to establish, beyond a reasonable doubt, that he acted with purpose to deprive the Mitchells of the funds. Again, we do not agree.

{¶20} While it is true that the funds from the check are from a joint checking account, the evidence shows that Mrs. Mitchell told both appellant and his fiancé that her husband was the individual who dealt with matters concerning maintenance and things for the house and that she did not want to do anything without his approval. It was only after appellant had informed her that he spoke with her husband that she signed the contract and gave him the check. Appellant claims that Mr. Mitchell did, in fact, authorize the new work and is only denying it after the fact; Mr. Mitchell, however, denied any such authorization and the trial court found the Mitchells' testimony to be more credible than that of appellant. We find no error in the trial court's assessment of

6

the evidence. We therefore conclude there was sufficient, credible evidence to support the trial court's verdict.

**{¶21}** Appellant's first and second assignments of error are without merit.

**{¶22}** Appellant's third assignment of error provides:

**{¶23}** "The appellant was denied effective assistance of counsel, in violation of his Sixth Amendment rights."

**{¶24}** For appellant to prevail on his claim of ineffective assistance of counsel, we must first conclude that counsel's performance fell measurably below that which might be expected from an ordinary attorney. Second, we must conclude that appellant suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, appellant must show, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Seiber*, 56 Ohio St.3d 4, 11 (1990). A reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. *Strickland*, *supra*, at 689.

**{¶25}** Appellant asserts counsel was ineffective for failing to object to statements, both at trial and at sentencing, suggesting he had committed the same or similar offenses to other individuals. We do not agree.

**{¶26}** At trial, when Mrs. Mitchell was asked on cross-examination whether she had recommended appellant to others, she responded: "Yes, I did, unfortunately. And both of them got taken too." And, at sentencing, during a victim impact statement, Mrs. Mitchell reiterated her testimony. Because these statements occurred at separate phases of the trial, they must be addressed individually.

7

{¶27} With respect to the statement made by Mrs. Mitchell at trial, we agree that it would have been prudent for counsel to move to strike the testimony. Because, however, the matter was tried to the bench, it is unlikely the statement carried any weight. The court, as the fact finder, was fully conscious of the mechanics of Evid.R. 403(A), and therefore capable of disregarding any potentially prejudicial testimony. And, because there was ample credible evidence advanced to support the finding of guilt, we conclude appellant suffered no prejudice from counsel's failure to object. We therefore hold counsel was not ineffective in this instance.

{¶28} Regarding the statements made at sentencing, appellant fails to identify how he was prejudiced by the victim impact statement. Moreover, because appellant's sentence was within the applicable range for a first-degree misdemeanor *and* there is nothing to suggest that the court relied upon any so-called "other acts" evidence in fashioning its sentence, we fail to discern how appellant could have been prejudiced by counsel's failure to object to the statement. We therefore hold that even if an objection should have been made, appellant suffered no prejudice.

{¶29} Appellant's third assignment of error lacks merit.

{¶30} For his fourth assignment of error, appellant asserts:

{¶31} "The trial court erred to the prejudice of the appellant by sentencing him to the maximum and ordering him to serve twelve days in jail along with restitution, as said sentence is excessive under the circumstances."

{¶32} "Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion." *Conneaut v. Peaspanen*, 11th Dist. Ashtabula No. 2004-A-053, 2005-Ohio-4658, ¶18, citing *State v. Wagner*, 80

8

Ohio App.3d 88, 95-96, (12th Dist.1992). As this court recently stated, the term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶33} "In fashioning an appropriate sentence in a misdemeanor case, the trial court must consider the factors set forth under R.C. 2929.22. Those factors include: the nature and circumstances of the offense; whether the offender has a history of criminal behavior and the likelihood of recidivism; whether there is a substantial risk the offender will be a danger to others; whether the offender's conduct has been characterized by a pattern of 'repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences'; and whether the victim's age, disability, or other factor made him or her more vulnerable. R.C. 2929.22(B)(1)(a)-(e)." *Conneaut v. Coleman*, 11th Dist. Ashtabula No. 2010-A-0062, 2011-Ohio-5099, ¶22.

{¶34} A trial court's failure to consider the R.C. 2929.22 factors amounts to an abuse of discretion. *See State v. Rogers*, 11th Dist. Trumbull Nos. 2009-T-0051 and 2009-T-0052, 2010-Ohio-197, ¶11. Unless an appellant demonstrates the court failed to consider the factors, however, a reviewing court will presume that the trial judge followed the standards required by the statute if the sentence lies within the statutory limit. *State v. Peppeard*, 11th Dist. Portage No. 2008-P-0058, 2009-Ohio-1648, ¶75. "A silent record raises the presumption that the trial court considered all of the factors." *Id*. "Further, there is no requirement that the court state on the record it considered the statutory sentencing criteria." *State v. Kish*, 11th Dist. Lake No. 2010-L-138, 2011-Ohio-4172, ¶8.

9

{¶35} In this case, appellant does not assert the court failed to consider the relevant factors, but, rather, contends the trial court imposed an excessive sentence due to bias. In support, appellant asserts the trial court based its sentence on a civil theory of "treble damages," which it "picked out of thin air." We do not agree.

{¶36} Preliminarily, we see no evidence that the trial court was hostile toward appellant or his attorney, nor is there any basis for an inference that the court exhibited favoritism for the Mitchells. Accordingly, appellant's argument that the court was biased is not supported by the record.

{¶37} The trial court, in imposing appellant's jail sentence, stated:

{¶38} There will be a jail sentence of 180 days with 168 days suspended. You told me you could do [the work] in four days. There's an old legal theory of treble damages or triple damages[.] Um, if you could have done it in four days, you should have done it in four days. You've had five months to give them their money back. Um, so, there will be 168 days suspended with 12 days to be served.

{¶39} The trial court's sentence reveals its belief that appellant's behavior was sufficiently severe to require 12 days in jail. The court did not believe appellant's version of events and apparently did not believe appellant ever intended to do the work upon which the contract was premised or return the money. The reference to "treble damages," while obscure, was merely a way of communicating the trial court's feelings that appellant's actions were not only illegal, but sufficiently problematic to deserve a harsh punishment under the circumstances; similar to a civil treble damages order, which, when authorized, is designed to impose a form of punishment on a litigant found liable for certain civil wrongs. In this matter, appellant's representations that he could

10

have done the work in four days, was multiplied by three. Although the manner in which the court arrived at its sentence was unusual, the sentence is within the relevant statutory range. We therefore conclude the court did not abuse its discretion.

{¶40} Appellant's fourth assignment of error is without merit.

{¶41} For the reasons discussed in this opinion, the judgment of the Conneaut Municipal Court is affirmed.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.