[Cite as *State v. Spano*, 2016-Ohio-3120.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-L-082** |
| JOHN SPANO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000549.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Robert N. Farinacci,* 65 North Lake Street, Madison, OH 44057 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, John Spano, appeals the trial court's judgment denying his motion to continue his sentencing and the court's judgment denying his motion to withdraw his guilty plea to 16 counts of forgery. He also appeals his sentence. The principal issue is whether appellant was entitled to withdraw his guilty plea simply because his attorney withdrew from the case prior to sentencing, requiring appellant to hire new counsel. For the reasons that follow, we affirm.

{¶2} On August 18, 2014, appellant was indicted for one count of grand theft by deception, a felony of the fourth degree, and 44 counts of forgery, each being a felony of the fifth degree. Appellant was employed as a salesman. He allegedly forged sales contracts in order to fraudulently obtain commissions and other economic benefits from his employer. Appellant pled not guilty.

{¶3} On May 19, 2015, appellant, while represented by Attorney Jay Milano, withdrew his not guilty plea and pled guilty to 16 counts of forgery. The trial court ordered a pre-sentence report and set the matter for sentencing on June 18, 2015.

{¶4} On June 10, 2015, Mr. Milano filed a motion to withdraw as appellant's counsel, arguing he had a mandatory professional duty to terminate his representation, along with a request to continue the sentencing for appellant to hire new counsel. That same day, the court granted Mr. Milano's motion to withdraw as counsel, but denied his request for a continuance.

{¶5} The next day, June 11, 2015, appellant's new attorney, Robert Farinacci, entered an appearance on his behalf, and filed a motion to reconsider the court's denial of appellant's request to continue the sentencing.

{¶6} On June 15, 2015, the trial court denied appellant's motion for reconsideration. As a result, two days later, on June 17, 2015, appellant filed a motion to withdraw his guilty plea.

{¶7} On June 18, 2015, the trial court held a hearing on appellant's motion to withdraw his guilty plea. Following the hearing, the trial court denied appellant's motion.

{¶8} The court then proceeded to sentencing. The prosecutor provided a lengthy statement of facts. He said the victim, Image First, is a small, family-owned

2

business, which is operated by Alex Shvartshteyn and his wife. Image First leases linens, such as staff uniforms, patient gowns, blankets, and towels, to outpatient medical facilities. Initially, a customer signs a contract with Image First for the type and amount of linens it needs. Image First orders and pays for the linens, and, upon their receipt, delivers some of them to the customer. Thereafter, each week, Image First picks up the soiled linens and replaces them with clean ones. The customer is billed monthly based on the full amount of linens it initially ordered.

{¶9} The prosecutor said that appellant was hired by Image First in 2010 as a delivery driver. When the position of company salesman became available, appellant asked Mr. Shvartshteyn if he could have the job and he agreed. As a driver, appellant was paid a straight salary, but, as a salesman, he was paid solely by commissions via bi-weekly draws against his commissions.

{¶10} Appellant reported to Mr. Shvartshteyn that he had signed up several new customers who had entered contracts for linen services. While some contracts were valid, many were fraudulent. As to the latter, appellant either forged the signatures of fictitious persons who were not authorized representatives of the alleged new customers or he forged the signatures of representatives of the alleged new customers who refused to sign contracts when appellant solicited them.

{¶11} Normally, Image First's service manager would deliver the linens to its customers, but appellant repeatedly told Mr. Shvartshteyn that he would deliver the linens to his new customers himself because he knew their principals and had a relationship with them. However, with respect to the fraudulent contracts, appellant never delivered the linens. Instead, he took them to storage facilities he rented and

3

kept them there. Appellant thus caused Image First to purchase large amounts of linens for alleged new customers who in fact had not contracted for linen services and caused Image First to incur substantial expense for which appellant knew the company would never be paid.

{¶12} Based on appellant's misrepresentations to Mr. Shvartshteyn about the new customers he had signed up and the linens he had delivered, Image First sent these "customers" invoices. When they did not pay, Image First sued them. Those companies incurred significant expense to defend these claims, which were the result of appellant's fraud and thus, unknown to Image First, groundless. Several of Image First's established customers, upon learning of appellant's fraud, terminated their relationships with the victim.

{¶13} Due to the expense appellant's fraud caused Image First, appellant almost destroyed Mr. and Mrs. Shvartshteyn's business. As a result, the Shvartshteyns had to take out a bank loan for $150,000 to cover the losses caused by appellant in order to keep their business afloat. The Shvartshteyns are still making payments on that loan, including interest, which would not have been required but for appellant's fraud.

{¶14} The prosecutor said that appellant was previously convicted in federal court in 1997 in connection with his notorious attempt to fraudulently purchase the New York Islanders, a professional hockey team, from a private owner and the National Hockey League. This fraud scheme resulted in a federal criminal case in the District Court for the Eastern District of New York. In that case, appellant decided he wanted to purchase a hockey team and he knew that the Islanders' owner wanted to sell. The only problem was that appellant did not have the money to pay for the team.

4

Undaunted by this minor detail, he signed a contract to buy the team. He provided fraudulent documents to a bank in order to secure a loan in the amount of $80 million. Through a series of forgeries and frauds, he convinced the NHL and the bank that he was worth well in excess of this amount. However, when it came time for him to close the deal and pay the amount he owed under the contract, his fraud was discovered. He was ultimately convicted of bank fraud and wire fraud. He was sentenced to six years in prison; ordered to pay $12 million in restitution; and placed on five years of supervised release, which is the federal counterpart of post-release control.

{¶15} Appellant was released from prison in 2003. In 2004, while he was still on supervised release, he formed a company, The Commercial Financial Group, which purportedly purchased and leased industrial machinery. He was paid on multiple contracts, but never delivered the promised goods. Appellant was convicted in the United States District Court for the Northern District of Ohio of five counts of mail fraud. He was sentenced to four years in prison; ordered to pay restitution in the amount of roughly $300,000; and ordered to serve three years of supervised release.

{¶16} Appellant was released from prison in 2009, and started working for Image First in 2010. He began committing the instant crimes while he was still on supervised release.

{¶17} The prosecutor also outlined the economic losses sustained by Image First as a result of appellant's fraud, which included thousands of dollars in stolen linens, commissions to which appellant was not entitled, and unauthorized business expenses, all of which resulted in a total net loss sustained by Image First in the amount of $75,985.

{¶18} Mr. Shvartshteyn also testified, confirming the prosecutor's recitation of the facts, including Image First's economic losses, and providing additional detail regarding appellant's fraud.

{¶19} Appellant's private investigator, Russ Csaszar, testified that, based on his review of appellant's pay stubs, it appeared that his earnings as a salesman were paid as a straight salary rather than commissions, as Mr. Shvartshteyn testified. Mr. Csaszar thus suggested that appellant was not required to make restitution. However, Mr. Csaszar admitted he never spoke to anyone at Image First in charge of payroll regarding whether appellant's earnings were based on salary or commissions.

{¶20} Appellant also testified on his own behalf. He said that Mr. Shvartshteyn was good to him; gave him a job when he needed one; and always treated him as a friend. Appellant said he engaged in this conduct, not to directly profit from it or to harm Mr. and Mrs. Shvartshteyn, but, rather, to make himself look good so he could keep his job and make the company look good to its franchisor by increasing the number of its customers. Appellant's attorney conceded that appellant's conduct "was all fraud" and that "[t]his is bad. It's rotten. He obviously did not learn his lesson the first time."

{¶21} The trial court sentenced appellant to eight months in prison for each of the 16 forgery counts to which he pled guilty. The court ordered 15 of the terms to be served consecutively to each other and one of them to be served concurrently, for a total of ten years in prison. As each was a fifth-degree felony, his potential exposure was up to one year on each count, for a total of 16 years. Pursuant to the parties' plea bargain, the court dismissed the remaining counts. The court also ordered appellant to pay restitution to Image First/Alex Shvartshteyn in the amount of $75,985.

{¶22} Appellant appeals, asserting four assignments of error. For his first, he alleges:

{¶23} "The court erred to the prejudice of the defendant by denying defendant's motion to continue the sentencing."

{¶24} The Supreme Court of Ohio has held that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). This court has held that the term "abuse of discretion" is one of art, connoting a judgment exercised by a court that does not comport with reason or the record. *State v. Morrison*, 11th Dist. Ashtabula No. 2014-A-0018, 2014-Ohio-5467, ¶21. Further, a decision is not an abuse of discretion when it is supported by sound reasons that are set forth in the judgment. *Grein v. Grein*, 11th Dist. Lake No. 2009-L-145, 2010-Ohio-2681, ¶51, 58.

{¶25} "In considering whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *State v. Moore*, 11th Dist. Geauga No. 2014-G-3195, 2014-Ohio-5183, ¶54, quoting *Unger, supra*.

{¶26} On June 15, 2015, the trial court issued a five-page, highly-detailed "Order Reconsidering and Denying Request for Continuance." In its order, the court articulated its reasons for denying the motion for reconsideration. Among other reasons, the court referenced delays of the proceedings caused by appellant's actions with respect to several discovery subpoenas he issued to the victim's customers. The trial court stated:

7

{¶27} Throughout these proceedings the defendant has repeatedly accused the state, the attorney for the subpoenaed parties, and the subpoenaed parties of misconduct.

{¶28} The procedural history of this case evidences repeated delays caused by the defendant and his counsel. Rather than working to resolve the disputes regarding the subpoenaed documents, the defendant engaged in a pattern of conduct which appears more designed to be antagonistic and dilatory * * * than to actually obtain the information he requested.

{¶29} * * * On May 20, 2015, the court scheduled the sentencing hearing for June 18, 2015.

{¶30} On June 10, 2015, 8 days before the defendant's sentencing hearing, counsel for the defendant filed a motion to withdraw * * *, and further asked the court to continue the sentencing hearing. The motion to withdraw was granted, but the motion to continue was denied, and former counsel for the defendant was ordered to immediately notify the defendant of the court's order and the need to immediately obtain counsel. The order granting the motion to withdraw further indicated that the sentencing hearing would not be rescheduled. Thereafter, the defendant was on notice that new counsel would need to be available both for the sentencing hearing and to adequately prepare himself or herself in the 8 days remaining before the sentencing.

{¶31} * * *

{¶32} As of the filing of the motion, new counsel had not yet picked up the file, but indicated he believed it to be voluminous. However, as the numerous filings relating to the subpoenas discussed above disclose, many of those records include documents relating to legitimate customers, and are wholly irrelevant to the defendant's sentencing for forging customer contracts. Further, the defendant had a private investigator who can likely help bring defense counsel up to speed.

{¶33} * * *

{¶34} The motion also indicates that the defendant needs time to identify any witnesses and subpoena them to appear. However, again, the defendant has had since May 20, 2015 to secure any witnesses.

{¶35} The vague possibility that new counsel may wish to bring in a witness that prior counsel did not subpoena, and that the defendant

8

may not be able to secure this hypothetical witness in time for the currently scheduled sentencing date is not a sufficient reason to continue the hearing.

**{¶36}** Moreover, the defendant and his counsel were advised throughout these proceedings that the court intended to comply with Sup.R. 39, requiring disposition of criminal cases within six months of assignment to this judge. Defendant's counsel has known that the court said it will timely dispose of the case by June 30, 2015.

**{¶37}** Thus, the trial court provided sound reasons supporting its decision denying appellant's request for a continuance, which were set forth in the court's judgment. Further, on appeal, appellant does not argue that, by denying his motions for continuance/reconsideration, the trial court prevented him from presenting any specific evidence, witness, or argument in mitigation at his sentencing.

**{¶38}** In view of the foregoing, the court did not abuse its discretion in denying appellant's motion for a continuance.

**{¶39}** For appellant's second assigned error, he contends:

**{¶40}** "The court erred to the prejudice of the defendant by denying defendant's motion to withdraw his plea of guilty prior to sentencing."

**{¶41}** Pursuant to Crim.R. 32.1, a defendant may file a motion to withdraw his guilty plea prior to sentencing. The Supreme Court of Ohio has held that a pre-sentence motion to withdraw a guilty plea should be "freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, "there is no absolute right to withdraw a guilty plea before sentencing, and the motion may be overruled *when there is no reasonable and legitimate basis for allowing withdrawal of the plea*." (Emphasis added.) *State v. Bisson*, 11th Dist. Portage No. 2012-P-0050, 2013-Ohio-2141, ¶23.

9

{¶42} "The trial court is in the best position to resolve the good faith, credibility, and weight of a defendant's assertions in support of his motion to withdraw his guilty plea." *State v. Curd*, 11th Dist. Lake No. 2003-L-030, 2004-Ohio-7222, ¶106. "Accordingly, our review of a trial court's denial of a motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion." *Id.*

{¶43} When reviewing whether a trial court properly exercised its discretion in ruling on a motion to withdraw a guilty plea, we apply the four factors set forth by the Eighth Appellate District in *State v. Peterseim*, 68 Ohio App.2d 211 (1980). *State v. Shaffer*, 11th Dist. Portage No. 2006-P-0115, 2007-Ohio-6404, ¶17. In *Shaffer*, this court held that a trial court does not abuse its discretion by denying a defendant's motion to withdraw a guilty plea when the following occur: (1) the defendant is represented by highly competent counsel, (2) the defendant was given a hearing under Crim.R. 11 before he entered his plea, (3) after the motion to withdraw is filed, the defendant was given a hearing on the motion, and (4) the court considered the defendant's request to withdraw his plea. *Id.* at ¶17.

{¶44} Appellant argues the trial court did not give him an adequate hearing on his motion to withdraw his guilty plea. In support, he argues his attorney told the trial court that appellant and his private investigator, Mr. Csaszar, would testify that on the day before trial, Mr. Milano told appellant he would have to plead guilty. Appellant argues the trial court told his attorney that the introduction of this testimony would result in a waiver of appellant's attorney-client privilege and that the court would summon Mr. Milano to testify. Appellant argues that, as a result, he withdrew Mr. Csaszar's affidavit.

Appellant also decided not to pursue this issue and not to present any testimony regarding what Mr. Milano allegedly told him.

**{¶45}** However, appellant does not reference the record to show that the trial court made any such comments. Thus, there is no evidence before us that the trial court ever said anything about a waiver of appellant's attorney-client privilege or that the court would summon Mr. Milano to testify. An appellate court in determining the existence of error is limited to a review of the record. *State v. Dudas*, 11th Dist. Lake No. 2007-L-169, 2008-Ohio-3261, ¶16, citing *Schick v. Cincinnati*, 116 Ohio St. 16 (1927), paragraph three of the syllabus. On appeal, it is the appellant's responsibility to support his argument by evidence in the record that supports his assigned errors. *Dudas, supra.* "When portions of the transcript necessary for resolution of assigned errors are omitted from record, the reviewing court * * * has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Because appellant presented no evidence in support of this argument, it is not well taken.

**{¶46}** Next, appellant argues the trial court erred in finding that his motion to withdraw his guilty plea was nothing more than a substitute for his earlier motion to continue the sentencing.

**{¶47}** Applying the four factors in *Peterseim, supra,* to the instant case, appellant presented no reasonable and legitimate basis for allowing withdrawal of his guilty plea. First, the trial court found, and appellant does not dispute, that during his guilty-plea hearing, he was represented by highly competent counsel.

11

{¶48} Second, appellant admits that his guilty-plea hearing fully complied with Crim.R. 11. During the hearing on appellant's motion to withdraw his plea, appellant's new counsel stated:

> {¶49} The crux of the motion [to withdraw the guilty plea] has nothing to do with the plea hearing itself. The crux of the motion is that * * * we don't believe that withdrawal will prejudice the State. We believe that the extent of the criminal plea hearing was fine, I'm sure. Actually, we haven't seen the transcript, but I'm sure it was without fault.

{¶50} Further, in its order denying appellant's motion to withdraw his plea, the trial court noted that it conducted appellant's guilty-plea hearing in full compliance with Crim.R. 11 in order to ensure that appellant's guilty plea was voluntarily entered.[1]

{¶51} Third, as discussed above, appellant was given a complete hearing on his motion to withdraw his guilty plea.

{¶52} Fourth, the record of the hearing on appellant's motion to withdraw his plea shows the trial court considered appellant's request to withdraw his plea.

{¶53} Further, as the trial court found, appellant presented no evidence that an issue exists with respect to any of the four *Peterseim* factors. The reason provided by appellant for the withdrawal of his plea, namely, that he was disappointed his attorney withdrew, is not a legitimate basis under *Peterseim* to withdraw his guilty plea. In fact, appellant's new counsel conceded during the sentencing that, although Mr. Milano

---

1. While appellant does not argue on appeal that Mr. Milano was ineffective or that his plea was not voluntary, he suggests as much by saying in his affidavit that his former counsel pressured him into pleading guilty. In addressing this argument, the trial court in its order denying the motion to withdraw appellant's plea noted that at the guilty plea hearing, appellant said he was completely satisfied with his attorney and that it was his own decision to plead guilty. Although appellant did not file the transcript of his guilty-plea hearing, based on the limited record before us, he failed to rebut the record showing his guilty plea was voluntarily entered. *State v. Delmanzo*, 11th Dist. Lake No. 2009-L-167, 2010-Ohio-3555, ¶39 (holding a defendant's self-serving affidavit alleging a coerced guilty plea is insufficient to rebut the record showing that his plea was voluntary; an affidavit from the court, prosecutor or defense counsel alleging a defect in the plea process may rebut the record).

withdrew between appellant's plea and sentencing, appellant's guilty plea was still valid. Significantly, appellant fails to cite any case law holding or even suggesting that the withdrawal of counsel between a guilty plea and sentencing is a reasonable and legitimate basis for allowing withdrawal of the plea.

**{¶54}** As a result, appellant's guilty plea was in full compliance with Crim.R. 11 and he failed to present any reasonable and legitimate basis for allowing withdrawal of his plea. Consequently, the trial court did not err in finding that appellant's motion to withdraw his plea was merely a substitute for his failed motion to continue his sentencing.

**{¶55}** We therefore cannot say the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea.

**{¶56}** For his third assignment of error, appellant alleges:

**{¶57}** "The trial court erred to the prejudice of the defendant by ordering the defendant to pay [$75,985] as and for restitution to Image First."

**{¶58}** "'Prior to imposing a restitution order, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence.'" *State v. Jones*, 11th Dist. Lake No. 2012-L-072, 2013-Ohio-2616, ¶11, quoting *State v. Coldiron*, 12th Dist. Clermont No. CA2008-06-062, 2009-Ohio-2105, ¶21. "The restitution ordered must 'bear a reasonable relationship to the actual loss suffered by the victim * * *.'" *Jones, supra,* quoting *State v. Stamper*, 12th Dist. Butler No. CA2009-04-115, 2010-Ohio-1939, ¶17.

**{¶59}** R.C. 2929.18(A)(1) authorizes the trial court to order restitution based on the victim's economic loss as a financial sanction. The statute provides, in part:

13

**{¶60}** If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution *if the offender, victim, or survivor disputes the amount.* (Emphasis added.)

**{¶61}** Appellant argues the trial court erred in not holding a hearing on the issue of restitution. However, as noted, a hearing is only required when questions are raised regarding the *amount of restitution.* R.C. 2929.18(A)(1); *State v. Cornelison*, 11th Dist. Lake No. 2013-L-064, 2014-Ohio-2884, ¶60. Here, appellant never disputed the amount of restitution owed to the victim. In fact, defense counsel stated during the sentencing hearing that because Mr. Shvartshteyn is the victim, the defense would not question the $150,000 in economic losses Mr. Shvartshteyn indicated he sustained as a result of appellant's conduct. Thus, appellant was not entitled to a hearing on the issue of restitution.

**{¶62}** In any event, the transcript of the sentencing shows that the court did hold a hearing on the issue of restitution as part of appellant's sentencing hearing. Appellant concedes the prosecutor gave a lengthy presentation regarding the victim's financial losses, which was supported by ten exhibits and Mr. Shvartshteyn's testimony. These exhibits included a recapitulation of the economic losses sustained by the victim. While appellant did not dispute the amount of Image First's economic losses, appellant argued that he was paid by salary, not commission, suggesting that the victim's economic loss was minimal. The defense's private investigator, Mr. Csaszar, testified in support of this

14

theory; however, the court noted that his testimony was merely hearsay. In opposition, Mr. Shvartshteyn and the company's previous salesman, Lance Haverlock, stated that Image First's salesmen are paid by commission, not salary. In awarding restitution in favor of the victim, the trial court obviously found the state's evidence to be more persuasive than that offered by the defense. Thus, contrary to appellant's argument, he was given a hearing on the issue of restitution.

{¶63} Next, appellant argues the trial court erred in ordering restitution in the amount of $75,985. However, after the court announced this amount from the bench, appellant never objected to or questioned the amount of the award. "If a defendant does not object to the court's imposition of restitution at the sentencing hearing or request a hearing in order to dispute the order, the issue is waived on appeal save plain error." *State v. Whitman*, 11th Dist. Lake No. 2011-L-131, 2012-Ohio-3025, ¶21.

{¶64} Crim.R. 52(B) allows us to correct "[p]lain errors or defects affecting substantial rights" that were not brought to the attention of the trial court. In *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), the Supreme Court of Ohio set forth strict limitations on what constitutes plain error. First, there must be an error, i.e., a deviation from a legal rule. *Id.* Second, the error must be plain, i.e., the error must be an obvious defect in the proceedings. *Id.* Third, the error must have affected substantial rights. *Id.* In other words, the error must have affected the outcome and thus prejudiced the defendant. *Id. See also State v. Martin*, 10th Dist. Franklin No. 07AP-362, 2008-Ohio-3299, ¶18. In the context of a guilty plea, prejudice means that but for the error, the defendant would not have pled guilty, but, rather, would have insisted on going to trial. *Curd, supra,* at ¶110.

15

{¶65} The record shows that the prosecutor outlined the victim's economic losses and Mr. Shvartshteyn testified concerning these losses at the sentencing hearing. These losses included $40,937.60 in unearned commissions paid to appellant; $20,500 in unauthorized expense payments; $3,242 for excessive car expenses resulting from a new car lease; $7,291 in excessive gas card purchases; $10,135 for appellant's mileage overage on the leased car; $8,971 for stolen linens; and $9,907 for personalized linens that could not be used by other customers. The prosecutor explained how each of these amounts was determined and how each resulted from appellant's fraud/forgeries. These items totaled $100,985. Subtracting $25,000, which was the amount paid under an employee dishonesty rider on Image First's insurance policy, its net economic loss, for which restitution was requested, was $75,985. Significantly, appellant did not cross-examine Mr. Shvartshteyn's testimony regarding Image First's economic losses. Nor did appellant present any evidence disputing the amount of any of these losses.

{¶66} Since the trial court's restitution order was supported by competent, credible evidence, the trial court did not err in awarding this amount. Without error, there can be no plain error. *Barnes, supra.*

{¶67} Contrary to appellant's argument, this court in *State v. Albaugh*, 11th Dist. Portage No. 2013-P-0025, 2013-Ohio-5835, did not hold that restitution may not include losses beyond those attributable to the offense to which the defendant pled guilty. Rather, this court stated that an award of restitution may include additional losses as long as the record establishes a nexus between the offense to which the defendant pled guilty and the victim's other losses, as the record does in this case. *Id.* at ¶14.

16

{¶68} Further, appellant argues the trial court erred in not determining his ability to pay before imposing its restitution order. In *State v. Magnusson*, 11th Dist. Lake No. 2006-L-263, 2007-Ohio-6010, this court stated that before imposing a restitution order under R.C. 2929.18, the court must consider the offender's present and future ability to pay the amount of the award. *Id.* at ¶73. This court stated that "R.C. 2929.18 does not require a court to hold a hearing on the issue of a defendant's ability to pay; rather, a court is merely required to consider the offender's present and future ability to pay." *Id.*

{¶69} Here, the court stated on the record that "[w]ith regard to restitution, pursuant to R.C. 2929.18, the Court has considered [appellant's] present and future ability to pay restitution." Further, in the court's sentencing entry, the court found that appellant "is able to pay a financial sanction of restitution or is likely in the future to be able to pay a financial sanction of restitution." Thus, the trial court considered appellant's present and future ability to pay in imposing its restitution order.

{¶70} For his fourth and last assigned error, appellant contends:

{¶71} "The court erred to the prejudice of the defendant by imposing consecutive sentences on each of the sixteen counts of forgery, save one, in violation of the Double Jeopardy Clause of the Fifth Amendment fo [sic] the United States Constitution."

{¶72} Appellant argues the trial court erred in not conducting an inquiry to determine whether the counts on which consecutive sentences were imposed were separate acts or whether they should have merged for sentencing purposes. However, appellant did not argue in the trial court that any of the offenses to which he pled guilty were allied offenses and should be merged. He thus forfeited all but plain error.

**{¶73}** The Supreme Court of Ohio in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, held:

> **{¶74}** An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, *an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import* committed with the same conduct and without a separate animus; and, *absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.* (Emphasis added.) *Id.* at ¶3.

**{¶75}** Because appellant fails to demonstrate a reasonable probability that his convictions are for allied offenses, he cannot demonstrate that the trial court's failure to conduct a merger analysis was plain error. *Id.*

**{¶76}** Moreover, the record demonstrates the absence of plain error. This court in *State v. Kouns*, 11th Dist. Portage No. 2011-P-0105, 2012-Ohio-5331, held that, although the defendant pled guilty, there were facts in the record showing the offenses at issue did not merge so that the defendant was not prejudiced by the lack of a merger analysis. *Id.* at ¶26. The presentation of such facts can be accomplished by a "brief recitation of facts by the prosecutor and does not have to involve long hearings or witnesses." *State v. Rogers*, 8th Dist. Cuyahoga Nos. 98292, 98584 through 98590, 2013-Ohio-3235, ¶45. *Accord State v. Devai*, 11th Dist. Ashtabula No. 2012-A-0054, 2013-Ohio-5264, ¶26.

**{¶77}** Here, the record contains facts showing the offenses to which appellant pled guilty are not allied offenses of similar import. At sentencing, the prosecutor stated that the 16 counts to which appellant pled guilty were not the same. She said they were

18

committed at 16 different locations and involved 16 different medical facilities. They were committed on 16 different dates and involved 16 different fraudulent contracts. She said that all 16 collateral victims (i.e., the "new customers" who did not sign contracts) spent time and money and hired counsel in order to untangle the fraud in which appellant involved them. Thus, the record shows the offenses to which appellant pled guilty did not merge and he was therefore not prejudiced.

{¶78} Next, appellant argues his sentence was excessive and disproportionate and thus inconsistent. Post-S.B. 86, in reviewing felony sentences, this court applies the standard of review set forth in R.C. 2953.08(G)(2). *State v. Moore*, 11th Dist. Geauga No. 2014-G-3183, 2014-Ohio-5182, ¶29. Under that standard, the appellate court may modify or vacate a sentence if it clearly and convincingly finds that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law.

{¶79} "R.C. 2929.11(B) requires consistency when applying Ohio's sentencing guidelines." *Delmanzo*, *supra*, at ¶32. Sentencing consistency is derived from the trial court's proper application of the statutory sentencing guidelines. *Id*. "Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory factors and guidelines." *Id*.

{¶80} The Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 apply as a general guide for every sentencing. *Id*. at ¶36. These sections do not require judicial fact-finding. *Id*. at ¶42. Rather, the trial court is simply required to consider the statutory factors. *Id*. Thus, "in exercising its discretion, a court is merely required to 'consider' the purposes of

19

sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12." *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶44. This requirement is met by the trial court simply stating that it considered these factors. *State v. Brown*, 11th Dist. Lake No. 2014-L-075, 2015-Ohio-2897, ¶34. Here, the trial court stated during the sentencing hearing and in its judgment on sentence that it considered the purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12 in imposing appellant's sentence. In addition, during the sentencing hearing, the court considered these principles and guidelines with respect to the facts and circumstances of this case.

{¶81} Specifically, with respect to the seriousness factors, the court noted that the victim suffered serious economic harm. The court also noted there were multiple collateral victims who were targets of appellant's forgeries. Further, the court found that appellant held a position of trust and his betrayal of Mr. Shvartshteyn's trust facilitated the offenses. The court noted this was not a normal forgery case; rather, it involved the perpetration of a complex fraud, which required significant manipulation and concealment and was committed at least 16 times. The court noted that, while appellant did not actually pocket any money, he improperly accepted commissions on contracts that were fraudulent.

{¶82} With respect to the recidivism factors, the court noted that appellant was previously convicted in federal court of two similar fraud schemes; that he served a total of ten years in federal prison; that he committed the instant crimes while under federal supervision; and that he committed his second set of federal offenses while under

20

federal supervision for his first set of federal offenses. The court noted that appellant was also ordered to pay restitution in his two federal cases, totaling over $12 million.

{¶83} Since the trial court properly considered the felony sentencing factors and guidelines in imposing appellant's sentence, his sentence was consistent. As a result, this court does not clearly and convincingly find that appellant's sentence is contrary to law.

{¶84} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶85} I concur with the majority's well-reasoned disposition of appellant's last three assignments of error. I respectfully dissent regarding the first assignment of error, concerning the trial court's failure to grant his motion to continue sentencing hearing. I would find the trial court abused its discretion on that issue.

{¶86} Appellant committed an elaborate scheme of fraud, including the 45 counts of forgery for which he was originally indicted. Throughout the proceedings, until he pleaded guilty to 16 counts of forgery, he was represented by Attorney Milano. Then

21

Attorney Milano moved the trial court to withdraw, and continue the sentencing hearing June 10, 2015, only eight days prior to sentencing. The trial court granted the former motion, and denied the latter. Attorney Farinacci noticed his appearance the following day, and immediately moved the trial court to reconsider its denial of the motion to continue. The trial court denied this motion June 15, 2015. Attorney McNamara did not notice his appearance on appellant's behalf until June 17, 2015 – one day before sentencing.

{¶87} Again, this was a complicated case. Attorney Farinacci had only seven days to prepare himself to argue in mitigation. Attorney McNamara had only one. Appellant had already pleaded guilty. A brief continuance to allow his counsel to review the relevant portions of the record, and prepare arguments, would not have unduly impinged on the trial court's docket, or the administration of justice. It was unreasonable to expect counsel to be able to properly prepare in such a short period of time. Implicit in the right to counsel is the right to competent counsel. The court's decision may well have prevented distinguished and experienced counsel from competently preparing for this matter, thus unduly prejudicing appellant.

{¶88} I respectfully concur and dissent.